## MATTINGLY v. DISTRICT OF COLUMBIA.

1. Congress, in exercising legislation over property and persons within the District of Columbia, may, provided no intervening rights are thereby impaired, confirm the proceedings of an officer in the District, or of a subordinate municipality, or other authority therein, which, without such confirmation, would be void.

2. An act of Congress, approved June 19, 1878 (20 Stat. 166), entitled "An Act to provide for the revision and correction of assessments for special improvements in the District of Columbia, and for other purposes," considered, with reference to the preceding legislation of Congress and of the legislative assembly of said District. *Held*, 1. That said act was practically a confirmation of the doings of the board of public works of the District, touching the improvement of streets and roads, and a ratification of the assessments prepared under an act of said assembly of Aug. 10, 1871, as charges upon the adjoining property, and that it conferred authority upon the commissioners to revise and correct such assessments within thirty days after the passage of the act. 2. That such confirmation was as binding and effectual as if authority had been originally conferred by law to direct the improvements and make the assessments.

APPEAL from the Supreme Court of the District of Columbia. The facts are sufficiently stated in the opinion of the court.

*Mr. Richard T. Merrick* and *Mr. T. A. Lambert* for the appellant.

*Mr. A. G. Riddle, contra.*

MR. JUSTICE STRONG delivered the opinion of the court.

The facts of this case appear in the bill, the answer, and the

accompanying exhibits. So far as it is necessary to restate them now, they are as follows: —

In the year 1871, the board of public works of the District of Columbia, a board constituted under and by virtue of the organic law of the District, caused to be constructed a sewer in and along the line of Seventh Street, in the city of Washington, extending from Virginia Avenue to the Potomac River. They also caused the street and sidewalks to be paved, and curbstones at the gutters to be set. The work had been commenced by the corporation of Washington before the board came into existence, and a contract had been made by the city with George M. Linville to pave and construct a sewer along that street; but the work had not been completed, when Congress, by act approved Feb. 22, 1871, incorporated the District and provided for the existence of a board of public works. The act declared the board should have entire control of, and make all regulations which they should deem necessary for keeping in repair, the streets, avenues, alleys, and sewers of the city, and all other works which might be intrusted to their charge by the legislative assembly of the District, or by Congress. Under this authority the board, when organized, took charge of the work on Seventh Street, continued Linville as contractor, caused the sewer to be changed and enlarged, and contracted with Albert Gleason for paving the sidewalks and setting the curbstones. After the completion of the work, they made an assessment of one-third of its cost upon the property adjoining, proportioning it to the frontage; gave notice of the assessment to the property owners; and the District was about to proceed in the collection of the assessments when this bill was filed. The assessments were made ostensibly by authority of the thirty-seventh section of the organic act of the District. The clause of that section conferring the authority is as follows: " They (the board of public works) shall disburse upon their warrant all moneys appropriated by the United States, or the District of Columbia, or collected from property holders, for the improvement of streets, avenues, alleys, and sewers, and roads and bridges, and shall assess, in such manner as shall be prescribed by law, upon the property adjoining and to be especially benefited by the improvements, authorized by law

and made by them, a reasonable proportion of the cost of the improvement, not exceeding one-third of such cost, which sum shall be collected as all other taxes are collected."

The complainants are property holders along the line of Seventh Street, adjoining that part of the street where the sewer was constructed, and where the curbstones and the paving were laid. Their properties are some of those upon which the board of public works made an assessment of one-third the cost of the improvement, and they bring this bill for an injunction against the collection of the sums assessed, and against issuing certificates of indebtedness of their properties. The bill also seeks a decree that the assessments are illegal and void, and an injunction upon the District, or the board of public works, against making any payment for the work done, and upon the contractors against receiving payment.

In support of the prayer for such relief, the bill charges, 1st, that the board was not authorized by law to make the improvement along Seventh Street; 2d, that no law existed at the time when the assessments were made, prescribing the manner in which the board should make assessments; 3d, that assessments according to the frontage of the street were unauthorized and illegal; and 4th, that in making the assessment no part of the cost of the improvement was charged upon school-house and church property, exempt by law from taxation, but that the whole of the one-third of the cost was charged against the other adjoining property. There are other minor complaints of the assessment, not, however, needful to be stated. They assail only its regularity.

We do not propose to inquire whether the charges of the bill are well founded. Such an inquiry can have no bearing upon the case as it now stands; for were it conceded that the board of public works had no authority to do the work that was done at the time when it was done, and consequently no authority to make an assessment of a part of its cost upon the complainants' property, or to assess in the manner in which the assessment was made, the concession would not dispose of the case, or establish that the complainants have a right to the equitable relief for which they pray. There has been congressional legislation since 1872, the effect of which upon the assessments

is controlling. There were also acts of the legislative assembly of the District, which very forcibly imply a confirmation of the acts and assessments of the board of which the bill complains. If Congress or the legislative assembly had the power to commit to the board the duty of making the improvements, and to prescribe that the assessments should be madé in the manner in which they were made, it had power to ratify the acts which it might have authorized. And the ratification, if made, was equivalent to an original authority, according to the maxim, *Omnis ratihabitio retro trahitur et mandato priori æquiparatur.* Under the Constitution, Congress had power to exercise exclusive legislation in all cases whatsoever over the District, and this includes the power of taxation. *Cohen* v. *Virginia*, 6 Wheat. 264. Congress may legislate within the District, respecting the people and property therein, as may the legislature of any State over any of its subordinate municipalities. It may therefore cure irregularities, and confirm proceedings which without the confirmation would be void, because unauthorized, provided such confirmation does not interfere with intervening rights. Judge Cooley, in view of the authorities, asserts the following rule: "If the thing wanting, or which failed to be done, and which constitutes the defect in the proceeding, is something the necessity for which the legislature might have dispensed with by prior statute, then it is not beyond the power of the legislature to dispense with it by subsequent statute. And if the irregularity consists in doing some act, or in the mode or manner of doing some act, which the legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by a subsequent law." Cooley, Const. Lim. 371. This rule, we think, is accurately stated.

The question is therefore presented, whether the legislative assembly was empowered by the organic law of the District to commit to the board of public works public improvements, to make appropriations for them, and to prescribe the manner in which assessments should be made, or whether Congress itself has confirmed the assessments of which the plaintiffs complain.

There is much in the legislation of the District assembly which, if it does not show a direct ratification of what was

done by the board of public works, at least exhibits an acquiescence in it and an approval.   After the work had been done upon Seventh Street, an act of that assembly, passed May 29, 1873, extended the time for payment of the assessments, and authorized the board to issue, and use in the discharge of outstanding obligations, certificates of indebtedness for work done under its direction, and chargeable to the private property benefited thereby.   This included assessments for work done or in progress under existing contracts, and the act declared that such certificates should be receivable in payment for assessments for special improvements.   The second section directed all certificates thereafter issued to be deposited with the commissioners of the sinking fund of the District, and pledged them for the payment of the principal and interest.  The third section extended the time of payment, and provided that, upon default of payment, the property against which the assessments and certificates existed should be sold ; and the fourth section authorized and directed the commissioners of the sinking fund to purchase the certificates, on request of the holders, and collect them on their account.   It is difficult to understand what this act meant, if it did not recognize the validity of the assessments made by the board of public works, and consequently the authority by which the work was done and the improvements were made.

The action of Congress has been even more significant. Passing by the act of March 3, 1875, which gave directions for sales to collect the assessments for special improvements, in itself presenting no doubtful implication, the act of Congress of June 19, 1878, appears to us to have set the matter at rest.   That act peremptorily directed the commissioners of the District " to enforce the collection, according to existing laws, of all assessments for special improvements prepared under an act of the legislative assembly of Aug. 10, 1871, as charges upon the property benefited by the improvements in respect to which the said assessments were made."   It also authorized the commissioners to revise such assessments within thirty days from the passage of the act, and correct the same, so far as the charges were erroneous or excessive.   The meaning of this act is not to be mistaken.  It was practically a

confirmation of what the board of public works had done. It is not to be conceded that Congress ordered the collection of assessments which it regarded as illegal; and the permission given to the commissioners to correct errors and excesses in them by giving drawback certificates, to be receivable in payment of assessments, leaves no doubt that the authority of the board to make them, as they were made, was intended to be recognized. It is not denied that the act had in view these assessments now assailed by the complainants, and no such denial could honestly be made. We are of opinion, therefore, that the assessments have been ratified by Congress. If there were errors in the manner of making them, or in the amount of the charges, provision was made for correction of the errors. If the church and school properties should not have been exempted, and consequently the amount charged upon the complainants' properties was erroneously increased, the commissioners were empowered to correct the wrong.

It may be that the burden laid upon the property of the complainants is onerous. Special assessments for special road or street improvements very often are oppressive. But that the legislative power may authorize them, and may direct them to be made in proportion to the frontage, area, or market value of the adjoining property, at its discretion, is, under the decisions, no longer an open question.

In conclusion, we may notice an argument of the complainants, that the deeds by which the fee-simple of the streets of Washington was conveyed to the United States require the Federal government to pay for grading and improving the streets. In answer to this, it is sufficient to say no such point was made in the court below, and no such deeds are in evidence or are exhibits in the case. In their absence, we cannot assume the fact upon which this argument rests.

*Decree affirmed.*

NOTE. — *National Bank* v. *Shoemaker*, appeal from the Supreme Court of the District of Columbia, was heard at the same time as the preceding case, and was argued by *Mr. Walter S. Cox* and *Mr. William A. Cook* for the appellant, and by *Mr. Richard T. Merrick* and *Mr. T. A. Lambert* for the appellee.

MR. JUSTICE STRONG delivered the opinion of the court.

This case is substantially ruled by *Mattingly* v. *District of Columbia, supra*, p. 687. The bill, as in that case, was for an injunction against the collection of a

special assessment, and for the surrender and cancellation of a certificate of indebtedness for such an assessment. The property upon which the assessment was laid is in the District of Columbia, though outside the bounds of the city of Washington. But the legislative assembly, created by the organic act, had authority to legislate for the entire District; and the board of public works had the same authority over the roads of the District as they had over the streets and avenues in the city. They had, throughout the District, the same power to make assessments for improvements. The assessment of which the bill complains was made by the board, and it was one of those which were confirmed and ordered to be enforced by the act of Congress of June 19, 1878. The bill of the complainant cannot, therefore, be sustained.

The decree will be reversed, and the cause remitted with instructions to dismiss the bill; and it is

*So ordered.*