Mr. Justice Hagner
delivered the opinion of the court.
This case has been argued with elaboration and ability worthy of its importance, and has received at our hands a careful examination.
At the trial below, which consumed nearly eighty days, Mr. Justice Wylie presided, and the lengthy record bears ample evidence throughout of his learning and assiduous industry. It presents for our consideration the almost unprecedented number of fifty-four exceptions to rulings of the presiding judge upon a great variety of important questions. Many of these rulings are manifestly correct, but we are relieved from the necessity and denied the power of examining a great number of the alleged errors, by reason of the irregular and imperfect form in which they are set forth in the record. The reiterated decisions of the Supreme Court of the United States and of this court, have sufficiently warned counsel of the consequences of neglecting certain requirements in the preparation of their cases on appeal. We are not at liberty to consume the time of the court in the consideration of exceptions which would inevitably be held fatally defective by the Supreme Court on appeal from our decision. Railroad Company vs. Varnell, 98 U. S., 479; Oliver vs. Cameron, 8 Wash. Law Rep., 310.
We shall confine ourselves to the examination of such of the exceptions, sufficient in form, as involve the questions deemed by us important to the decision of the case before us.
This action was instituted by the plaintiff upon a number *267 of written contracts, executed by the District authorities, recited in the declaration, which, besides the common counts and accompanying bills of particulars, contained a count in quantum meruit upon the aggregated claims, amounting to $268,502. Subsequently another suit was brought by the plaintiff against the District, upon other claims. The cases were consolidated, and a verdict for $183,000 obtained by the plaintiff against the District, whose counsel, for certain reasons, refused to make defense at the trial. This verdict was set aside by this court in general term, and the consolidated cases remanded, and in the circuit court the order of consolidation was vacated and this suit tried separately, and a verdict rendered for the defendant under the instructions of the court.
By the act of Congress of 21st February, 1871, a new form of government was provided for the District of Columbia in lieu of the then existing municipalities. The extensive powers confided to the new government were coupled with various restrictions, some of which are unusual in municipal charters. The “ organic act,” as it is called, substituted a Board of Public "Works, which was entrusted with entire control of the streets, their regulation and repair, and the disbursement of all moneys for their improvement. These powers were to be exercised in subordination to several stringent conditions, which, so far as the same are important here, are embraced in the following sections of the Revised Statutes of the District of Columbia, viz.:
“Sec. 77. The Board of Public Works shall have entire control of and make all regulation which they shall deem necessary for keeping in repair the streets, avenues, alleys, and sewers of this city, and all other work which may be entrusted to their charge by the legislative assembly or Congress.”
“ Sec. 80. All contracts made by the Board of Public Works shall be in writing, and shall be signed by the parties making the same, and a copy thereof shall be filed in the office of the secretary of the District.”
“ Sec. 81. The Board of Public Works have no power to *268 make contracts to bind said District to the payment of any sums of money, except in pursuance of appropriations made by law, and not until such appropriations shall have been made.”
“ Sec. 51. The legislature shall never grant or authorize extra compensation, fee, or allowance to any public officer, agent, servant, or contractor, after service has been rendered on a contract, or a contract made.”
“ Sec. 52. The legislative assembly shall never authorize the payment of any claim or part thereof, created against the District, under any contract or agreement made without express authority of law; and all such unauthorized agreements or contracts shall be null and void.”
In this state of the law, the Board of Public Works entered into the contracts declared as in the declaration; and these are to be considered as entered into by the District government itself. Barne’s Case, 91 U. S., 540.
The case "was tried upon the pleas of non-assumpsit, payment, a final adjudication and award upon all claims of the plaintiff, and full payment under the avrard.
1st. The plaintiff’, to maintain the issues on his part joined, offered to read in evidence to the jury, one of the contracts declared as No. 593, which embraced w'hat was known as the Georgetown work. To the admissibility of this contract in evidence the defendant objected, “ on the ground that said contract was invalid because there was no appropriation by law for doing said work and furnishing said material, at the time said contract was entered into.” The same objection was interposed to the subsequent offer of other similar contracts; and the court instructed the jury that there could be no recovery upon any contract entered into in the absence of an antecedent appropriation, notwithstanding the jury might believe the work had been performed and materials furnished in alleged conformity to the contracts so offered in evidence.
Wé have no question, upon the facts, that there was no-such antecedent appropriation; and the first inquiry is as to the correctness of the several rulings upon this jioint, at different stages of the trial.
*269 In our opinion they were entirely proper. There is no uncertainty about the language of the organic act on this point. It explicitly denied to the Board of Public Works all power of making contracts to bind the District “ until such appropriation shall have been made.” All such “mentioned contracts or agreements,” it is declared, “shall be null and void,” and the legislative assembly was forbidden to authorize the payment of any claim against the District, “ upon any contract or agreement made without express authority of law.”
Congress unquestionably had the right to make such provisions, and as long as a contract remained under this Congressional condemnation there could be no recovery upon it. To decide otherwise would be in flagrant contempt of the plain injunction of the statute.
2d. The plaintiff then insisted that notwithstanding the invalidity of the contracts, it was- competent for him to recover for the work performed under them upon the quantum meruit count, but the presiding judge instructed the jury that there could be no recovery in respect of said work upon the count of quantum meruit, and this ruling presents the next question for our consideration.
It is insisted, upon behalf of the plaintiff, that his right to recovery, as thus claimed, is established by the decision of the Supreme Court i‘n the case of Clark vs. United States, 95 U. S., 539.
In our opinion that decision does not sustain this contention of the plaintiff, in view of the wide difference between the cases.
An act of Congress declared it'the duty of the Secretaries of War, of the Navy and of the Interior, to require all contracts made in behalf of the government, by them or their officers, to be in writing, signed in a particular manner by the parties and returned to the Department with certain attendant formalities.
A quartermaster on the Bio Grande, with the approval of his commanding officer, entered into an oral agreement with the owner of a steamer, to pay $150 per day for its use; but *270 no specific contract was made, or to be made, until a trial trip should have been completed, under the charge of the Government servants to ascertain her fitness for the service required; if the trip should prove satisfactory, the parties were then to enter into a formal written contract for her hire. It was further agreed, orally, that the trial trip was to be at the expense of the United States, and if the steamer should be lost during the trip, the Government was to pay for her, whatever should be estimated as her value by three disinterested men. During the trial trip, the vessel was wrecked while in chai’ge of the quartermaster’s men, and the owner claimed the amount of the assessed loss, and $1,200 for eight days’ hire, and filed his claim in the Court of Claims for both amounts. That court held that the provision of the statute requiring written contracts was mandatory, and refused relief upon this ground, for either claim.
The Supreme Court affirmed the ruling as to the value of the vessel, but held that under the forms of proceeding in the Court of Claims, the claimant might recover the hire after the Government had enjoyed the use of the vessel, as upon an implied contract for a quantum meruit, although such was not the form of his demand.
The ease was certainly one of hardship; for the Government had actually enjoyed the use of- the vessel, and it was destroyed in its service, while in charge of its servants.
The Court of Claims is vested with jurisdiction to determine upon any contract, express or implied, with the United States, and it is bound by no special rules of pleading. But the present suit is pending in a court of law; brought, not at large, for services in the absence of any agreement, but upon express written contracts, framed by the parties in contempt of the inhibitions of a statute plainly denouncing them as void and expressly forbidding their payment. In Clark’s case it appeared that no contract was made, or was intended to be made, until the return of the vessel from her trial trip, and the claim was only supported upon the idea of an implied contract, in the absence of any express agreement, as though, for example, the vessel had been impressed for eight days upon a public emergency.
*271 But, as was remarked by Mr. Justice Miller, in his dissenting opinion, the statute contained no declaration that a parol contract made by a quartermaster, “ shall be void, or that it shall not be enforced, or that no suit may be sustained on it. There is no language in it addressed to the party contracting with the Government.”
The organic law of the District contains all these declarations in language unmistakably emphatic. It would be imputing to Congress a lamentable lack of wisdom to suppose that the plain purpose of the statute — to endeavor to curb extravagance by requiring a previous appropriation for expenditures under contracts — could be successfully evaded by so shallow a contrivance as that here relied upon.
To allow a recovery upon a quantum meruit for the recovery of money claimed to be due for work done under a contract which the law has pronounced void, and payment of. which is forbidden by law, would render the whole inhibition futile, and virtually work a repeal of the statute, while opening the door to a greater evil than the statute was designed to prevent.
The consideration that the plaintiff was probably ignorant of these provisions of the organic act, was urged in his behalf as a reason why they should not be invoked against him.
Unfortunately for this pretension, one of the contracts in the record, signed by Strong, expressly' provides that it “ shall be subject to any and all the provisions of the act of 21st of February, 1871, so far as the same shall or may be in any respect applicable to said contract,” and a very slight examination of the statute thus referred to would have advertised him of the sole condition upon which the Board of Public Works had authority to enter into a contract with him.
But apart from actual knowledge, the law imputes to the plaintiff’ full information of the provisions of this public statute, and he is not to be heard to plead ignorance on the subject. The court, in State vs. Kirkley, 29 Maryland, 110, says, “no principle relating to municipal corporations is more firmly established than that those who deal with their *272 agents or officers must, at their peril, take notice of the limits of the powers both of the municipality and of those who assume to act as its agents and officers.” And the Supreme Court saj'B, in Clark’s Case: “Every man is presumed to know the law, and if he makes a contract with a public officer in contempt of the requirements of the statutes, he becomes knowingly an accessory to its violation.” 95 U. S., 542.
We are therefore of the opinion that there could be no recovery, either upon these contracts themselves or for the work done under them, under a quantum meruit, so long as the contract remained obnoxious to the inhibition of the organic act, and that the rulings of the presiding judge below upon this point were correct.
3d. The plaintiff then offered in evidence sundry acts of the late legislative assembly of the District of Columbia, which, as he insisted, recognized and ratified the contracts thus objected to, and cured whatever defects, in form or substance, were relied on to prevent recovery upon them by he plaintiff'.
The presiding judge ruled that these acts were insufficient and incompetent for the purpose indicated; and in our opinion this ruling was correct.
Whatever thing the orgauic law forbade the Board of Public Works to perform, it was powerless to accomplish either directly, in the first instance, or indirectly by its recognition or adojotion ■ after an infraction of the law by its attempted performance.
The Board of Public Works was one of the agencies of the District government, and the legislative assembly was simply another of those agencies; and if the act' attempted by the agents first-named wras void under the law, and incapable of validation by its subsequent ratification by that agent itself, it is difficult to understand how an attempted validation by the other agent could be effectual. It would be to work a total destruction of the safeguard Congress had seen fit to interpose against lavish expenditure by requiring the publicity of previous appropriation, if a second and *273 more glaring contempt of the law could be allowed to condone its previous violation. Two such wrongs could not make one right, even in the form of an appeal from Philip, dazed with the extent of his wasteful extravagance, to the •same Philip not yet sobered from financial intoxication.
In Marsh vs. Fulton County, 10 Wallace, 678, the Supreme Court announces the principle, that an act of ratification can only avail where there was originally power and authority to perform the act to be ratified. As the District government possessed no power to make a contract without a previous appropriation by law, it was, therefore, powerless to ratify its own unlawful act. In Horn vs. Mayor and City Council of Baltimore, 30 Md., 224, the court, discussing the ■attempted ratification of an illegal contract, says: “ It is wholly immaterial whether the mayor and city council, by a subsequent ordinance adopted and ratified the grading of the avenue. If the act was void, because ultra vires, and they had no power to authorize it before it was undertaken •and commenced, they certainly had no power to adopt it after it was done.”
4th. The plaintiff then read in evidence several acts of Congress, with reference to the District of Columbia, and claimed that they contained such adoption and ratification >of the contracts, by Congress, as justified a recovery for the work performed under them. But the court held that no ■sufficient ratification appeared upon a proper construction of the statutes relied on.
We have no doubt that Congress possessed the power to waive all irregularities in the form and execution in the contracts, and that the power resided with Congress alone.
In Mattingly’s Case, 97 U. S., 690, the court says: “It Congress had power to commit to the Board of Public Works the duty of making the improvement and to prescribe that the assessments should be made in the manner in which they were made, it had the power to ratify the act it might have authorized. * * It may, therefore, cure irregularities and confirm proceedings which, without the confirmation, Avould be void, because unauthorized, provided such confirma *274 tion does not interfere with .intervening rights. Judge-Cooley, in view of the authorities, asserts the following ruler “If the thing wanting, and which failed to be done, and which constitutes the defect in the proceeding, is somethingr ■the necessity for which the legislature might have dispensed with, by prior statute, then it is not beyond the power of the legislature to dispense with it by subsequent statute; and if the irregularity consists in doing some act, or in the mode or manner of doing some act which the legislature-might have made immaterial, by prior law, it is equally competent to make the same immaterial by subsequent law.”’ Cooley Const. Lim., 371.
Has Congress exercised this power of ratification in the-statutes referred to?
On the 20th of June, 1874, after the completion of the-greater part of this work, Congress again changed the form of the District government and substituted three Commissioners as the governing power of the District, in place of' the governor and legislative assembly. In the second section of this act, among the enumeration of powers of the new officials, they were authorized to apply the taxes and other-revenues of the District to the payment of “ debts due to* laborers and employees of the District and Board of Public-’Works;” and they were forbidden to incur obligations,, except for designated objects, one of which is declared to be “the protection or preservation of improvements existing,, or commenced and not completed at the time of the passage of this act.”
By the sixth section it was made the duty of the Comptrollers of the Treasury, who were thereby “ constituted .a. board of audit, to examine and audit for settlement all the suspended and floating debt of the District of Columbia' and of the Board of Public Works, hereinafter specified,, namely, first, the debt evidenced by sewer certificates; secondly, the debt purporting to be evidenced and ascertained by certificates of the auditor of the Board of Public Works; thirdly, the debt evidenced by the certificate of the auditor and Comptroller of the District of Columbia; fourthly, claims. *275 ■existing or hereafter created, for which no evidence of indebtedness has been issued, arising out of contracts, written or oral, made by or on behalf of the Board of Public Works; fifthly, claims for which no evidence of indebtedness has been issued arising out of contracts, written or oral, made by or on behalf of' the District of Columbia; sixthly, all claims for private property taken by the Board of Public Works from the avenues, streets and alleys of the cities of Washington and Georgetown; and, seventhly, all unadjusted claims for damages that may have been presented to the Board of Public Works pursuant to an act of the legislative assembly of the District of Columbia, “ entitled an act,” &c. And the section proceeds to direct the board of audit to issue to each claimant a certificate signed as therein specified, “stating the amount found to be due to each and on what account.” And the board of audit is further required to examine and accurately ascertain the indebtedness of the District, and to report the result of their investigations to Congress.
Section 7 authorizes the issuing of what are known as the 3.65 bonds of the District, which are'to be exempt from taxation by federal statute or municipal authority, and the faith of the United States, it was declared, was thereby pledged that the interest should be punctually paid upon said bonds, and a sinking fund provided for their redemption — the bonds to be registered in the office of the Register of the Treasury under provision to be made by the Secretary of the Treasury. This section contains the further requirement — “ the sinking fund commissioners are hereby authorized to exchange said bonds at par for like sums of any class of indebtedness in the preceding section of this act named, including sewer taxes or assessments paid, evidenced by certificates of the auditing board provided for in this act.”
We thirik the provisions of this statute disclose on the part of Congress, speaking as the supreme legislature of the District, a full recognition of the existence of the seven classes of claims enumerated in the sixth section, and a waiver of all formal objections to their allowance. Important *276 Treasury officers were directed to examine and audit these claims “ for settlementto issue their certificates, stating the amount found to be due to each and on what account,” aucl to transmit a register of such certificates to Congress and to the comptroller of the District. Any person comprehended within either of the enumerated classes, although his claim might be informal or irregular, was entitled to receive a certificate for the amount found due to him, and to exchange the' same for a 3.65 bond for the security of which the public faith of the nation was effectively pledged. Indeed, the purpose of the statute plainly was to assist those-whose claims, in one form or another, w7ere obnoxious to objection. There was very slight necessity, or none, for any such aid to those whose claims were in all respects regular — it was the invalid claims alone that needed the aid of the Congressional physician. Among the enumerated classes were claims upon oral contracts. Such contracts were expressly forbidden by the organic law, which pointed out with precision the formalities of writing, signing and filing indispensable to the validity of all contracts of the District. That these requirements were mandatory cannot be doubted under the decision in Clarke’s case, and their omission absolutely invalidated the claim. And yet the board of audit was expressly required to issue their certificates for the amount found to be due upon such oral contract, and the claimants were entitled to receive the guaranteed bonds in lieu of these certificates. Can it be doubted that Congress intended to waive the want of writing in the cases referred to? In our judgment a similar waiver was designed, of whatever other formalities might appear on presentation in all other claims described in the sixth section of the act of 1874; and claims like1 those of the plaintiff were comprehended in the enumeration in that section. This construction derives great support from the provision in the second section, authorizing the Commissioners to apply the revenues to the payment of debts due to laborers and employees, and to incur obligations to preserve and protect improvements not yet completed, *277 without reference to whether the work was performed under formal contracts or not.
The Supreme Court has considered the sufficiency and effect of Congressional recognition or waiver of formal objections to claims against the District in Mattingly’s Case, before referred to. 97 U. S., 657.
The District authorities had undertaken to collect certain sewer assessments, for work done under the direction of the Board of Public Works. Mattingly and his co-complainants insisted that the assessments were attended by such numerous and fatal defects and omissions that they were illegal and void and incapable of enforcement; and such was the decision of this court in general term. But the Supreme Court declined to inquire whether these objections were well founded, because, as they said, Congress by subsequent law had directed the Commissioners of the District to enforce the collection of all assessments for special improvements as charges upon the property benefitted; and had also authorized their revision and correction. “ The meaning of this act,” says the court, “ is not to be mistaken. It was practically a confirmation of what the Board of Public Works had done. It is not to be conceded that Congress ordered the collection of assessments which it regarded as illegal. We are, therefore, of the opinion that the assessments have been ratified by Congress.”
So, in our judgment, “it is not to be conceded that Congress authorized the issue of certificates and their exchange for bonds guaranteed by the nation, in settlement of claims which it regarded as illegal.” We think the evidence of ratification of informal claims, by the act of June, 1874, was much more explicit than that afforded by the'statute which the Supreme Court regarded as sufficient in Mattingly’s Case.
It was suggested that even if evidence of Congressional ratification or confirmation could be gathered from the act of 1874, still its curative effect was-designed only to be in force while the scheme of the act- was pursued, and that the former informalities became effective if the claims were presented elsewhere than before the Board of Audit. But in *278 our opinion that waiver once established remained in full foi’ce for all time, everywhere, as against whatever infor-malities the statute designed to hold as immaterial.
The rulings of the learned judge, which we have thus felt obliged to dissent from, excluded from the jury the consideration of four of the contracts declared upon, and so seriously affected the plaintiff’s presentation of his case, that we have no alternative but to reverse the judgment below and remand this cause for a new trial.
We desire particularly to say that we have no purpose to pass upon the sufficiency of the defense, that all the plaintiff' claims has been settled by submission and award, and that the plaintiff' has been overpaid for all work he has done for the District.
Finding the serious error we have been considering, it is unnecessary to express further our views upon such of the remaining questions as have been presented to the court in proper form.
Judgment reversed and cause remanded for new trial.