McMILLAN ET AL., APPELLANTS, v. CITY OF BUTTE ET AL., RESPONDENTS.

(No. 1,843.)

(Submitted March 26, 1904.    Decided April 12, 1904.)

*Municipal Corporations — Taxation — Street Improvements— Special Assessments Upon Property Specially Benefited— Due Process of Law.*

1. Session Laws 1897, p. 219, Section 30, providing that when a street improvement is made the city council shall enact by ordinance that the expense shall be paid by the entire district created as previously provided, according to area, is not unconstitutional as depriving the property owner of his property without due process of law, in that such provision is a legislative declaration that all property in the proposed district is benefited by the improvement, and to the same extent.

2. In the absence of proof that the burden imposed on a property owner by a municipal assessment is altogether out of proportion to the benefit actually accruing to the property, he cannot assert that his property is thereby taken without compensation.

3. Where a certain lot was assessed for municipal improvements for its entire area, the fact that only half of such lot was included in the description in the resolution creating the assessment district was immaterial.

4. An alleged protest to street paving, filed by abutting owners, stating the reasons why they did not desire the paving done during the year 1898, and stating that they were willing to have the street paved during the year 1900, and that payment therefor should be required in three annual installments was not an unqualified protest to the paving required by Session Laws of 1897, p. 219, Section 31.

*Appeal from District Court, Silver Bow County; E. W. Harney, Judge.*

ACTION by A. A. McMillan and others against the city of Butte and others.    From a judgment in favor of defendants, plaintiffs appeal.    Affirmed.

## STATEMENT OF THE CASE.

On March 1, 1899, the city council of Butte proposed council resolution No. 230, creating an improvement district desig-

nated "No. 2" for the purpose of paving Wyoming street from
Park street to Broadway, and appointed March 8, 1899, at 8
o'clock p. m., as the time when the council would hear objections
to the final adoption of such resolution.    Due publication of
this resolution was made according to law.    The property em-
braced in this proposed district which would be liable for as-
sessment consists of lot 1, owned by Geoffrey Lavell, lot 10,
owned by Miles Finlen, lot 11, owned by these plaintiffs, and
lot 33, owned by Pat Tallent, as shown by the attached map.

In the description given of this property in resolution No. 230 lot 10 above is described as starting from the northwest corner, thence east 30 feet, thence south 132 feet to the southwest corner, thence west, etc. Prior to the meeting of the city council on March 8th, these plaintiffs, with Tallent and Lavell, owning together more than one-half of the area of the property which would be liable for assessment to pay for such improvement, filed with the city clerk the following writing, designated "Exhibit B":

"BUTTE, MONTANA, March 7th, 1899.

"To the Honorable Mayor and Council of the City of Butte, Montana—Gentlemen: We, your petitioners, respectfully protest against the paving of Wyoming street from Park street to Broadway street, and set forth the following reasons: That we have paid a considerable amount of money for paving done during the year 1898, and that our rents from the abutting property on said street is not large enough to meet any special tax for the year 1899. We therefore ask that the said street above named be not paved during this year. We set forth, however, that we are willing that the said street be paved during the year 1900, and that payments for the said paving be made in three annual payments.

"Very respectfully yours,

"Representing 128 feet—A. A. McMILLAN,

"DAVID J. CHARLES,

"Representing 121 feet—PATRICK TALLENT,

"Representing 132 feet—G. LAVELL,

"Total 381 feet—By J. P. COLLINS,

"Agent."

Notwithstanding this writing, the council finally adopted this resolution, and on June 9, 1899, passed an ordinance to carry such resolution into effect and to make the improvement heretofore mentioned. On January 17, 1900, the council, by resolution No. 289, levied and assessed a tax upon the property in such district to pay for the improvement made, and due notice of such resolution was published as required by law. In this

notice, February 7, 1900, at 7:30 p. m., was designated as the time at which objections to the final adoption of this resolution would be heard. This resolution was adopted, and, these plaintiffs having failed to pay the first installment of the tax so levied, defendants undertook to enforce collection of the same, when this action was commenced to restrain the city and the city treasurer from proceeding further. An order to show cause why an injunction pending the litigation should not be granted was issued.

Defendants answered, admitting many of the allegations of the complaint, denying some, and pleading affirmative matter, which was denied in a reply. Upon the hearing oral testimony and documentary evidence were received, and at the conclusion the court denied the application for an injunction, and from this order the plaintiffs appealed.

*Messrs. McBride & McBride,* for Appellants.

The law under which the city of Butte purports to act in its attempt to levy an assessment against the property of plaintiffs is unconstitutional in that it results in depriving the plaintiffs of their property without due process of law. (Constitution of U. S., Art. V of the Amendments; Constitution of Montana, Art. III, Sec. 27; Dillon on Mun. Corp. Vol. 2, p. 756; Cooley on Taxation, p. 606; Hare on Constitutional Law, Vol. 1, p. 310, 312, 314, 315; *Stuart* v. *Palmer,* 74 N. Y. 183; *Kirby* v. *Shaw,* 19 Pa. 258; *Shenley* v. *Com.,* 6 Pa. 29; *Washington Ave. Case,* 69 Pa. 360; *City of Paterson* v. *Society,* 24 N. J. 385; *Tideater Co.* v. *Coster,* 3 C. E. Green, 51; *In re Drainage of Lands,* 35 N. J. 497; *St. John* v. *E. St. Louis,* 50 Ill. 92; *Lee* v. *Ruggles,* 52 Ill. 427; *Detroit* v. *Chapin,* (Mich.) 42 L. R. A. 638; *Village of Norwood* v. *Baker,* 19 Sup. Ct. Rep. 193; *French* v. *B. A. P. Co.,* 21 Sup. Ct. Rep. 625; *White* v. *City of Tacoma,* 109 Fed. 33-34.)

*Mr. Edwin M. Lamb,* and *Mr. H. A. Bolinger,* for Respondents.

MR. JUSTICE HOLLOWAY, after stating the case, delivered the opinion of the court.

Two questions only are presented for out consideration: (1) Appellants contend that the statute authorizing the creation of this improvement district and providing what property should be assessed to defray the cost of the improvement is unconstitutional, in that it deprives the appellants of their property without due process of law. (2) It is contended that the city had no authority to proceed further after appellants and the other property owners had presented to the council their written objections in Exhibit B, above.

1.   The statute under which the city proceeded is known as "House Bill No. 204, Laws of the Fifth Legislative Assembly, approved March 8, 1897." (Session Laws 1897, p. 212.) Sections 30 to 36, inclusive, of this Act (pages 219-221) provide for the creation of these special improvement districts, designate the property which shall be assessed to pay for such improvement, and the method of collecting the tax. Section 30 provides that when such improvement is made the council shall enact by ordinance that the expense of such improvement shall be paid by the entire district, each lot or parcel of land within the district to be assessed for the part of the whole expense which its area bears to the area of the entire district, exclusive of streets, alleys and public places. An opportunity is afforded by Sections 31 and 35 for interested parties to object to the adoption of the resolution creating the district, and also to object to the adoption of the resolution levying the assessment. This Act is a legislative declaration that all the property in the proposed district is benefited by the improvement, and it also fixes the measure by which such benefit is to be ascertained.

The particular objections urged against it are that it fixes by arbitrary rule the proportion of the tax which a particular piece of property shall bear, and that it affords no opportunity to the property owner to show that in fact his property is not benefited to the extent of the tax imposed, and the following rule from 2

Dillon on Municipal Corporations, Sec. 761, Subd. 3, is urged as the only lawful measure by which these assessments can be ascertained: "(3) Special benefits to the property assessed—that is, benefits received by it in addition to those received by the community at large—is the true and only just foundation upon which local assessments can rest; and to the extent of special benefits it is everywhere admitted that the legislature may authorize local taxes or assessments to be made."

Much confusion and uncertainty have arisen from the diverse views expressed by different courts upon these statutes providing for special assessments to pay for improvements made by municipalities, and, no matter what rule has been adopted, great difficulty has been encountered in its application. Who shall determine what property is actually benefited, and the extent of that benefit? And is the property owner entitled to a judicial determination of these questions? In the paragraph succeeding the one quoted above, Dillon, in his work on Municipal Corporations, says: "(4) When not restrained by the constitution of the particular state, the legislature has a discretion, commensurate with the broad domain of legislative power, in making provisions for ascertaining what property is specially benefited, and how the benefits shall be apportioned."

If, then, there are no constitutional restrictions in the way (and we are unable to find any in the constitution of this state), and nothing in the nature and circumstances of the particular case to make an assessment upon the property benefited in proportion to its superficial area work a manifest injustice, it may now be regarded as settled as within the competency of the legislature to provide that the assessment shall be so made (Dillon on Mun. Corp. Sec. 761, Subd. 7; *Adams* v. *City of Shelbyville,* 154 Ind. 467, 57 N. E. 114, 49 L. R. A. 797, 77 Am. St. Rep. 484), and laws imposing this tax upon the property legislatively determined to be benefited, as in the Act under consideration, are not open to the objection that they deprive the owner of his property without due process of law. (2 Cooley on Taxation, 1181.)

After this doctrine had been announced by a great many courts, some doubt was created by the decision in *Norwood* v. *Baker,* 172 U. S. 269, 19 Sup. Ct. 187, 43 L. Ed. 443, wherein expressions are found which apparently greatly limit the legislative power; but, when considered with reference to the facts of that particular case, much of the confusion is dispelled. However, the doctrine announced in that case gave rise to such uncertainty that numerous other cases involving practically the same questions as the one now under consideration were soon before that same tribunal for determination, and these led to an interpretation of that decision by the court which rendered it, and set at rest all controversy upon the subject. In *French* v. *Barber Asphalt Paving Co.,* 181 U. S. 324, 21 Sup. Ct. 625, 45 L. Ed. 879, the court reviews at length its former decisions, including the decision in *Norwood* v. *Baker,* above, and declares the law to be settled as now determined by the very great weight of authority, viz.: " 'Special assessments for special road or street improvements very often are oppressive. But that the legislative power may authorize them, and may direct them to be made in proportion to the frontage, area or market value of the adjoining property, at its discretion, is, under the decisions, no longer an open question' " [*Mattingly* v. *District of Columbia,* 97 U. S. 692]—and quotes with approval the following statement of the rule from Dillon on Municipal Corporations: "Whether the expense of making such improvements shall be paid out of the general treasury or be assessed upon the abutting or other property specially benefited, and, if in the latter mode, whether the assessment shall be upon all property found to be benefited or alone upon the abutters according to frontage or according to the area of their lots, is, according to the present weight of authority, considered to be a question of legislative expediency." (2 Dillon on Municipal Corporations, 752.)

This decision was immediately followed by *Tonawonda* v. *Lyon,* 181 U. S. 389, 21 Sup. Ct. 609, 45 L. Ed. 908; *Webster* v. *Fargo,* 181 U. S. 394, 21 Sup. Ct. 623, 645, 45 L. Ed. 912; *Cass Farm Co.* v. *Detroit,* 181 U. S. 396, 21 Sup. Ct. 644, 645,

45 L. Ed. 914, and *Detroit* v. *Parker,* 181 U. S. 399, 21 Sup. Ct. 624, 645, 45 L. Ed. 917—in every one of which the decision in *French* v. *Barber Asphalt Paving Co.* is approved, and the doctrine there announced reaffirmed. The same court, in *Murray's Lessee* v. *Hoboken Land & Improvement Co.,* 18 How. 272, 15 L. Ed. 372, after a very careful consideration of the expression "due process of law," reached the conclusion that that expression, as used in the Constitution of the United States, does not require that the assertion of the rights of the public against the individual or the imposition of burdens upon his property for the public use shall in all cases be done by resort to courts of justice; and this doctrine was reaffirmed in *Davidson* v. *New Orleans,* 96 U. S. 97, 24 L. Ed. 616. We are at least safe in saying that it may be regarded now as settled that, in the absence of a showing that the burden imposed by such assessments is altogether out of proportion to the benefit actually accruing to the property, the property owner cannot be heard to assert that his property has been taken from him without due process of law. (Elliott on Roads and Streets, Secs. 558-559.)

In the present instance there is no allegation or proof that in the proceedings which resulted in making the improvement complained of and in assessing the appellants' lot for a portion of the cost thereof there has been any disregard of the provisions of the statute, or any city ordinance, or that appellants' property has been charged differently from that of the other lot owners; nor is it alleged in the complaint that the portion of the cost of the improvement assessed against appellants' lots in point of fact exceeded the benefits especially accruing to their property by reason of such improvement having been made.

The complaint is made that only one-half of lot 10 was included in the resolution creating the district, but upon the hearing it was shown that as a matter of fact that lot had been assessed for its entire area, and that the assessments then due had been paid. So that, even assuming that a mistake was made in the description of lot 10 above, plaintiffs are not in a position

to complain, since they were not assessed for any greater amount than they would have been had the description been properly made.

2.   Section 31, above, provides that the city council by resolution may create an improvement district; that due notice of such shall be given by publication of the resolution itself, which shall also designate the time when the council will hear objections to the final adoption of such resolution. Section 34 provides for a resolution levying the assessment on the property liable for the tax, and Section 35 provides for giving notice of this resolution, and affords an opportunity for the property owners to object to its final adoption. . It is contended that when the owners of more than one-half of the area of the property liable to the assessment filed with the city council the writing Exhibit B, above, the council was thereupon shorn of any power to proceed further. Section 31 of the Act above, among other things, provides: "If at such meeting, objections are made to the making of such improvement, by owners or agents representing more than one-half in area of all the property which would be assessed to defray the cost of said improvement, the improvements shall not be made at that time." It is to be observed that the language of the statute is, "if at such meeting, objections are made to the making of such improvement," etc. The writing Exhibit B is not an objection of that character; on the contrary, the signers particularly say that they are willing that the contemplated improvement should be made during the year 1900. At most this writing can be designated properly only as a petition to the council setting forth the reasons of the petitioners why the improvement should not be made during 1899, or, more strictly speaking, why the tax for such improvement should not be exacted during 1899. It is worthy of note that there is nothing in the record to show when the proposed improvement was to be made, or when in fact it actually was made, except by inference it may be said to appear to have been done prior to January 17, 1900. There is no allegation in the complaint whatever showing when the improvement was made,

and the inference above only appears from the answer, while it does affirmatively appear that the assessment was levied in four installments due, respectively, November, 1900, November, 1901, November, 1902, and November, 1903; and, while the appellants allege in their complaint that they objected to the adoption of the resolution levying this assessment, this is specifically denied in the answer, and at the hearing no testimony whatever was offered by appellants in support of their allegation. So that upon the whole it cannot be said that the city council did not literally take these property owners at their word, and make the improvement to suit their convenience, as expressed in Exhibit B, above. Instead of Exhibit B being an objection within the meaning of Section 31, above, it is nothing more than a petition to the city council, which, so far as this record shows, was actually complied with by the council. The objection contemplated by Section 31 above can mean nothing less than an unqualified protest. Anything less than this falls short of an objection.

We find no error in the record. The order is affirmed.

*Affirmed.*

Rehearing denied May 24, 1904.