LYONS v. BANK OF DISCOUNT OF CITY OF NEW YORK.

(Circuit Court, S. D. New York. May 29, 1907.)

1. DISTRICT OF COLUMBIA—LEGISLATIVE POWER OF CONGRESS—OPERATION OF ACTS.

The power given to Congress by the Constitution, to legislate for the District of Columbia, is not given to it as a local legislature, but as the legislature of the United States, and laws enacted under such power are laws of the United States, and enforceable as such throughout the Union.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 17, District of Columbia, § 4.]

2. SAME—STATE BANKS DOING BUSINESS IN DISTRICT—SUBJECTION TO NATIONAL BANKING LAWS.

By Act June 25, 1906, 34 Stat. 458, amendatory of Code D. C., all banking or trust companies organized under the laws of any of the United States having an office or banking house located within the District of Columbia, where deposits or savings are received, are made subject to the provisions of the national banking act. They are required to make and publish reports, and the Comptroller of the Currency is given power to examine into their condition, "and when in his opinion it is necessary to take possession of any such bank or company for the reasons and in the same manner and to the same extent as are provided in the laws of the United States with respect to national banks." Held, that such act is within the constitutional powers of Congress to legislate for the District of Columbia, and that under it the Comptroller has authority to appoint a receiver for any such corporation, who may sue to collect assets in any federal court in any part of the United States for distribution among its creditors; it being no part of the purpose of such proceeding to dissolve the corporation.

At Law. On demurrer to complaint.

Blandy, Mooney & Shipman (John F. Heffernan, of counsel), for plaintiff.

Martin A. Schenck (Clarence Lexow, of counsel), for defendant.

RAY, District Judge. By an act of Congress approved June 25, 1906 (34 Stat. 458), it is provided as follows:

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled that sections seven hundred and thirteen and seven hundred and fourteen of an act entitled 'An act to establish a code of law for the District of Columbia,' approved March third, nineteen hundred and one, and amended by the acts approved January thirty-first and June thirtieth, nineteen hundred and two, are hereby amended so as, respectively, to read as follows:

"Section seven hundred and thirteen. All savings banks or savings companies, or trust companies, or other banking institutions, organized under authority of any Act of Congress to do business in the District of Columbia, or organized by virtue of the laws of any of the states of this Union, and having an office or banking house located within the District of Columbia where deposits or savings are received, shall be and are hereby, required to make to the Comptroller of the Currency, and to publish all reports which national

banking associations are required to make and publish under the provisions of sections five thousand two hundred and eleven, five thousand two hundred and twelve, and five thousand two hundred and thirteen of the Revised Statutes of the United States and shall be subject to the same penalties for failure to make such reports as are herein provided, which penalties may be collected by suit before the Supreme Court of the District of Columbia. And the Comptroller shall have power, when in his opinion it is necessary, to take possession of any such bank or company for the reasons and in the manner and to the same extent as are provided in the laws of the United States with respect to national banks. Provided, however, that banking institutions having offices or banking houses in foreign countries as well as in the District of Columbia shall only be required to make and publish the report provided for in this section semiannually. And provided, however, that all publications authorized or required by said section five thousand two hundred and eleven of the Revised Statutes and all other publications authorized or required by existing law to be made in the District of Columbia, shall be printed in two or more daily newspapers of general circulation published in the city of Washington, one of which shall be a morning newspaper.

"Section seven hundred and fourteen. The Comptroller of the Currency, in addition to the powers now conferred upon him by law for the examination of national banks, is hereby further authorized, whenever he may deem it useful to cause examination to be made into the condition of any bank mentioned in the preceding section. The expense of such examination shall be paid in the manner provided by section five thousand two hundred and forty of the Revised Statutes of the United States relating to the examination of national banks.".

The material allegations of the complaint are as follows: (1) The Ætna Banking & Trust Company, at all the times mentioned prior to October 20, 1906, was a banking corporation organized and existing under the laws of the state of West Virginia, U. S. A. (2) Prior to said date, at all times mentioned, it had an office and banking house located in the city of Washington, D. C., where deposits and savings were received, and another banking house and office in the city of Butte, state of Montana. (3) October 20, 1906, said Ætna Banking & Trust Company was, pursuant to the laws of the United States in such case made and provided, duly found by the Comptroller of the Currency of the United States to be insolvent. (4) That thereupon, and under and by virtue of the acts of Congress in such cases made and provided, the said Comptroller took possession of said Ætna Banking & Trust Company, and duly appointed the plaintiff receiver of said corporation. (5) That plaintiff duly qualified as such receiver, and became entitled to and took possession of all the assets and property of said corporation. (6) That defendant is a banking corporation organized and existing under the laws of the state of New York. (7) That October 20, 1906, the defendant was owing to said Ætna Banking & Trust Company a balance of $797.18, balance of money it had theretofore deposited with defendant, and which it had agreed to pay over on demand. (8) That plaintiff, as such receiver, before commencing this action, duly demanded said money, but defendant neglected and refused to pay same over, on the sole ground that November 5, 1906 (which was after the appointment and qualification of such receiver), an attachment had been levied on said moneys of said Ætna Banking & Trust Company on deposit with defendant in a suit in the Supreme Court of the state of New York, wherein the Bankers' Money Order Association, a corporation organized under and by virtue of the

laws of the state of New Jersey, was the plaintiff, and said Ætna Banking & Trust Association was defendant, and in which action said Ætna Company has not appeared, or been personally served with process, and that, under the laws of the state of New York in such case, the attachment having been levied before demand by the receiver, the lien of the attachment is prior to the right of the receiver to such money on deposit. (9) That no attachment was levied prior to the appointment of such receiver. (10) That this action is brought by direction of the Comptroller of the Currency of the United States.

Three grounds of demurrer are stated: (1) That the complaint does not state facts sufficient to constitute a cause of action; (2) that the plaintiff has not legal capacity to sue; and (3) this court has not jurisdiction of the subject of this action.

The question presented is whether the receiver of a state banking corporation having an office and doing business within the District of Columbia, duly appointed by the Comptroller of the Currency under the act of Congress quoted, may sue for and recover, in the proper Circuit Court of the United States, moneys due and owing to such banking corporation, or property belonging to it, when such debt is owing by parties outside the District of Columbia, or is in the possession of persons outside the said District? If not, then all a state banking corporation doing business in said District has to do to render such act substantially ineffective is to place its assets over the line in Maryland or Virginia, and the receiver when appointed and qualified will be powerless to recover them. In such case the creditors in the District of Columbia would be compelled to go to the state of the incorporation, and institute legal proceedings, and then follow the assets as best they could.

The Congress of the United States is the sole lawmaking power of the District of Columbia. Its laws, within the Constitution, are there supreme and extend to all persons within the District and to all corporations organized under and pursuant to the laws of a state who see fit to go there and do business, so far at least as business is done within the District, and so far as its property is found there. The courts of the District are courts of the United States, and it is a district to which criminals may be removed for trial. The laws made by Congress for the government of the District and persons and property therein are laws of the United States and are to be enforced as such. See Cohens v. Virginia, 6 Wheat. 264, 424, 425, 5 L. Ed. 257; Mattingly v. District of Columbia, 97 U. S. 687, 690, 24 L. Ed. 1098; Horner v. United States, 147 U. S. 449, 462, 13 Sup. Ct. 409, 37 L. Ed. 237. The Comptroller of the Currency is an officer of the United States, and his jurisdiction extends throughout the United States as to all matters lawfully placed within his control. That the Congress of the United States had power to authorize him, in proceedings duly taken, to declare persons or corporations doing a banking business in said District insolvent, and to proceed and wind up the business and collect the assets, and, so far as possible, discharge its obligations, cannot, to my mind, be questioned. If not so, then Congress is powerless to govern the District of Columbia as against the corporations organized under state laws and electing to go into the District and

do business there. In so doing, can it provide that all the assets of the. insolvent corporation doing business there, situate anywhere in the United States, shall be collected by the receiver appointed by the Comptroller and applied to the discharge of its obligations? It is not a proceeding to dissolve the corporation or to annul its charter. The act of Congress quoted does not assume to confer any such power or authority on the Comptroller. That matter is left to the state of incorporation. But it does assume to say that if a banking corporation: organized under the laws of a state sees fit to come into the District: of Columbia, and there do business, it must conform to the laws of such District, and that in case it does not, and becomes insolvent, the Comptroller may so declare and appoint a receiver of all its assets, wherever situate, and apply such assets according to the provisions of the laws of the United States to the satisfaction of the claims of all its creditors. Whether the corporation survives or perishes is a question with which Congress does not concern itself. Congress can legislate for the entire United States as to all matters within its powers, express or implied. Cases cited. When it has legislated for the District of Columbia and persons and property there residing or there doing business, or as to property there situated, such laws may be enforced as against such persons and property anywhere within the United States. If a person commits a crime within such District, he may be arrested anywhere and taken there for trial and punishment. If civil judgment is pronounced against a person there, it may be executed anywhere, in the mode and manner prescribed by Congress, if the Constitution be not violated. And I take it no state can enact a: law which would in any way impair such judgment or prevent its enforcement. Congress, in such case, might adopt the procedure of the state, or provide one of its own. In Mattingly v. District of Columbia, 97 U. S., at page 690, 24 L. Ed. 1098, the court said:

"Under the Constitution, Congress had power to exercise exclusive legislation in all cases whatsoever over the District, and this includes the power of taxation. Cohens v. Virginia, 6 Wheat. 264, 5 L. Ed. 257. Congress may legislate within the District, respecting the people and property therein, as may the Legislature of any state over any of its subordinate municipalities."

In Horner v. United States, 147 U. S., at pages 462, 463, 13 Sup. Ct. 414, 37 L. Ed. 237, in referring to Cohens v. Virginia, the court said:

"In Cohens v. Virginia, 6 Wheat. 264, 441, 5 L. Ed. 257, it was held that, where an act of Congress empowered the corporation of the city of Washington to authorize the drawing of lotteries for certain purposes, it could not force the sale of the tickets in Virginia, where such sale was prohibited by law. That case is a strong authority in favor of the view that, although lottery tickets are authorized by one government, such validity cannot authorize their sale within the territory of another government which forbids such sale."

It will be noted that the laws of the state forbade the sale of such tickets. Turning to Cohens v. Virginia, supra, we find that Congress had created a corporation and granted to such corporation the following power:

"The said corporation shall have full power to authorize the drawing of lotteries for effecting any important improvement in the city, which the

ordinary funds or revenue thereof will not accomplish: Provided, that the sum to be raised in each year shall not exceed the amount of $10,000. And provided also, that the object for which the money is intended to be raised shall be first submitted to the President of the United States, and shall be approved of by him."

### Marshall, C. J., said:

"Two questions arise on this act: (1) Does it purport to authorize the corporation to force the sale of these lottery tickets in states where such sales may be prohibited by law? If it does (2), is the law constitutional? If the first question be answered in the affirmative, it will become necessary to consider the second. If it should be answered in the negative, it will be unnecessary, and consequently improper, to pursue any inquiries, which would then be merely speculative, respecting the power of Congress in the case."

The court then proceeds to answer the first question in the negative, and Marshall, C. J., says, referring to the powers above quoted:

"We find in them no expression which looks beyond the limits of the city. The powers granted are all of them local in their nature, and all of them such as would, in the common course of things, if not necessarily, be exercised within the city. The subject on which Congress was employed when framing this act was a local subject. It was not the establishment of a lottery, but the formation of a separate body for the management of the internal affairs of the city, for its internal government, for its police. Congress must have considered itself as delegating to this corporate body powers for these objects, and for these objects solely. In delegating these powers, therefore, it seems reasonable to suppose that the mind of the Legislature was directed to the city alone, to the action of the being they were creating within the city, and not to any extraterritorial operations. In describing the powers of such a being, no words of limitation need be used. They are limited by the subject. But if it be intended to give its acts a binding efficacy beyond the natural limits of its power, and within the jurisdiction of a distinct power, we should expect to find, in the language of the incorporating act, some words indicating such intention. Without such words we cannot suppose that Congress designed to give to the acts of the corporation any other effect beyond its limits than attends every act having the sanction of local law, when anything depends upon it which is to be transacted elsewhere. * * * To interfere with the penal laws of a state, where they are not leveled against the legitimate powers of the Union, but have for their sole object the internal government of the country, is a very serious measure, which Congress cannot be supposed to adopt lightly, or inconsiderately. * * * An act, such as that under consideration, ought not, we think, to be so construed as to imply this intention, unless its provisions were such as to render the construction inevitable."

In giving construction to and in arriving at the intention of Congress in enacting the law now under consideration, these considerations have no application. The language of the act is broad, and by its provisions all banking corporations organized under the laws of a state, and "having an office or banking house located within the District of Columbia, where deposits or savings are received," are required to make and publish reports, and are subjected to penalties. They, in this respect, are made subject to the provisions of the national banking act. The Comptroller may examine into the condition of the corporation, not that of the branch, and "shall have power, when in his opinion it is necessary, to take possession of any such bank or company for the reasons and in the same manner and to the same extent as are provided in the laws of the United States with respect to national banks." That Congress intended the appointment of a receiver for the corporation,.

. not the branch, and possession of its assets wherever located, not those of the branch, cannot, I think, be questioned.    Congress intended that when a banking corporation goes into the District of Columbia and establishes a banking house there, and proceeds to do business, that, in case of its insolvency, it may be so declared by the Comptroller of the Currency, who may thereupon appoint a receiver, who shall take possession of all its property and assets.    The language is broad enough to cover all this, and to narrow the construction would be to place a portion of the assets of the company under the control of the Comptroller, to be secured through the courts of the United States, leaving the balance with the state courts; leave it for the Comptroller of the Currency to say the corporation was insolvent, and for a state to say the contrary, and so lead to confusion and irreconcilable conflict.

I think that, when a banking corporation goes into the District of Columbia and establishes an office or a banking house, it submits itself to, and becomes subject to, the provisions of this act of Congress of the United States, and that Congress, under the Constitution, had full authority to enact the law.    It does not assume to interfere with the state of incorporation or its laws.    If the Comptroller, acting under authority of the supreme law of the land, first takes action and possession of the property, the state courts must yield, although no such question is presented here.    There is no conflict between the courts of the state of West Virginia, the state of incorporation, and the United States, or the District of Columbia.    So far as appears, this corporation, which does not present itself, has no property or business in West Virginia.    In applying the assets of the corporation to the payment of its debts, it is assumed the Comptroller will not violate the rights of such creditors or of the stockholders as they may be defined by the law of the state of incorporation.

In Cohens v. Virginia, supra, on another branch of the case, that of jurisdiction, Marshall, C. J., in speaking of laws enacted by Congress for the government of the District of Columbia, said (pages 424, 425, of 6 Wheat. [5 L. Ed. 257]):

"In the enumeration of the powers of Congress, which is made in the eighth section of the first article, we find that of exercising exclusive legislation over such district as shall become the seat of government.    This power, like all others which are specified, is conferred on Congress as the Legislature of the Union, for, strip them of that character, and they would not possess it. In no other character can it be exercised.    In legislating for the District, they necessarily preserve the character of the legislature of the Union, for it is in that character alone that the Constitution confers on them this power of exclusive legislation.    This proposition need not be enforced.    The second clause of the sixth article declares that: 'This Constitution, and the laws of the United States, which shall be made in pursuance thereof, shall be the supreme law of the land.'    The clause which gives exclusive jurisdiction is, unquestionably, a part of the Constitution, and, as such, binds all the United States.    Those who contend that acts of Congress, made in pursuance of this power, do not, like acts made in pursuance of other powers, bind the nation, ought to show some safe and clear rule which shall support this construction, and prove that an act of Congress, clothed in all the forms which attend other legislative acts, and passed in virtue of a power conferred on, and exercised by, Congress, as the legislature of the Union, is not a law of the United States, and does not bind them."

This power to reach the assets of this corporation anywhere in the United States is incidental to the main powers of declaring the corporation insolvent and appointing a receiver, which main powers are exercised by the Comptroller of the Currency of the United States in the District of Columbia, where the corporation had a banking house and was doing business. It is unlike the capability of a state to exercise jurisdiction in another state of the Union. Each state is an independent sovereignty, except that its courts are bound to give full faith and credit to the judgments of the courts of the other when acting within their jurisdiction. On this distinction, Marshall, C. J., in Cohens v. Virginia, 6 Wheat. 427, 428, 429, 5 L. Ed. 257, said:

"Were any one state of the Union to pass a law for trying a criminal in a court not created by itself, in a place not within its jurisdiction, and direct the sentence to be executed without its territory, we should all perceive and acknowledge its incompetency to such a course of legislation. If Congress be not equally incompetent, it is because that body unites the powers of local legislation with those which are to operate through the Union, and may use the last in aid of the first, or because the power of exercising exclusive legislation draws after it, as an incident, the power of making that legislation effectual, and the incidental power may be exercised throughout the Union, because the principal power is given to that body as the legislature of the Union. * * * How, then, is it that Congress, legislating exclusively for a fort, punishes those who, out of that fort, conceal a felony committed within it? The solution, and the only solution, of the difficulty, is that the power vested in Congress, as the legislature of the United States, to legislate exclusively within any place ceded by a state, carries with it, as an incident, the right to make that power effectual. If a felon escape out of the state in which the act has been committed, the government cannot pursue him into another state, and apprehend him there, but must demand him from the executive power of that other state. If Congress were to be considered merely as the local legislature for the fort or other place in which the offense might be committed, then this principle would apply to them as to other local legislatures, and the felon who should escape out of the fort or other place in which the felony may have been committed could not be apprehended by the marshal, but must be demanded from the executive of the state. But we know that the principle does not apply; and the reason is that Congress is not a local legislature, but exercises this particular power like all its other powers, in its high character as the legislature of the Union. The American people thought it a necessary power, and they conferred it for their own benefit. Being so conferred, it carries with it all those incidental powers which are necessary to its complete and effectual execution."

In short, when the Congress of the United States has exclusive jurisdiction to legislate for any particular place, and as to any particular subject, and it is acting, or its instrumentalities are in motion and acting, the power may be made effectual throughout the United States, and the general power, coextensive with the entire United States, may be invoked and used in aid of the local power. I think this principle declared by Marshall in Cohens v. Virginia is sound, and is to be applied here, and that the purpose of Congress in providing for the appointment of a receiver of such a state corporation, doing business within the District of Columbia, may be made effectual by invoking the general power referred to. And this case is not similar to one where a corporation of one state goes into another state and does business there by its permission. In such case the permitting state has no jurisdiction outside its own territorial boundaries.

Counsel for defendant says, in substance, that to concede this power to Congress, legislating for the District of Columbia, is to recognize that Mexico, an independent foreign nation and government, may appoint a receiver for the banking corporation of one of the states of the United States having a branch in Mexico and send him into the United States and take to Mexico all the assets of such corporation. This is ignoring the fact that the United States is an independent government and nation, and that the several states are but a part thereof, independent in some respects, true, but still subject to and bound to recognize the laws of Congress and the paramount authority of the United States in all matters where it has power to legislate. The United States are not a part of Mexico, nor does that nation have any jurisdiction over it, or any part of it. As Congress has exclusive power to legislate for the District of Columbia and as to all persons and all property therein, as we have seen, and as it unites the power of local legislation with those which are to operate throughout the Union, and may use the last to aid the first, and as the power of exercising exclusive jurisdiction in the District of Columbia draws after it, as an incident, the power of making that legislation effectual, and as the incidental power may be exercised throughout the Union because the principal power is given to Congress as the legislature of the Union, and as Congress has unmistakably indicated its purpose that these powers, as to state corporations doing business within the District of Columbia, shall be exercised throughout the United States, I conclude that the act quoted is not only constitutional, but that the powers of the plaintiff as receiver are such that he may ask for, demand, sue for and recover, and marshal the assets of this corporation wherever situated and found. The receiver appointed by the Comptroller of the Currency of the United States is not the officer of any court, but the agent and officer of the United States. In re Chetwood, 165 U. S. 443, 458, 17 Sup. Ct. 385, 41 L. Ed. 782, and cases there cited; Auten v. U. S. Bank, 174 U. S. 125, 19 Sup. Ct. 628, 43 L. Ed. 920. He acts under the control of the Comptroller of the Currency, to whom the moneys collected are paid over, and he, in turn, disburses them to the creditors of the insolvent institution. In re Chetwood, 165 U. S. 458, 17 Sup. Ct. 385, 41 L. Ed. 782. The insolvent corporation being within the jurisdiction of the District of Columbia, doing business there, by its own election, how can a creditor of such institution deny the right of the receiver to its assets? It is settled law that the Comptroller of the Currency has power to appoint a receiver of a defaulting or insolvent national bank without a previous judicial ascertainment of the necessity for such action. Bushnell v. Leland, 164 U. S. 684, 17 Sup. Ct. 209, 41 L. Ed. 598, and cases cited. Clearly, this receiver was properly appointed, and is empowered to act, unless the law quoted is unconstitutional and void. And I do not think this defendant can question the legality of his appointment collaterally, or even in a direct proceeding. The plaintiff is receiver in fact. Cadle v. Baker, 20 Wall. 650, 651, 22 L. Ed. 448. Said the court:

"The debtors of a bank, when sued by a receiver, cannot inquire into the legality of his appointment. It is sufficient for the purposes of such a suit that he has been appointed and is receiver in fact. As to debtors, the action

of the Comptroller in making the appointment is conclusive until set aside on the application of the bank. The bank may move in that behalf, but the debtor cannot. Section 50 makes express provision for a contest by the bank."

Therefore he has legal capacity to sue.

The demurrer must be overruled, with costs of demurrer; but defendant may answer within 20 days after being served with a copy of the order to be entered pursuant hereto.