ISSIDORE PASSETT, *Plaintiff in Error*, v. HENRY R. CHASE, SHERIFF OF DADE COUNTY, FLORIDA, *Defendant in Error*.

Division A.

Opinion Filed March 18, 1926.

*Bart A. Riley* and *M. H. Rosenhouse,* for Plaintiff in Error.

*J. B. Johnson,* Attorney General, and *Roy Campbell,* Assistant, for Defendant in Error.

BROWN, C. J.—The plaintiff in error was arrested by the sheriff of Dade County, Florida, and imprisoned in the jail

in Miami, Florida, whereupon he sued out a writ of *habeas corpus* before a judge of the circuit court. The return of the sheriff showed that the plaintiff in error was being held in his custody by virtue of a bench warrant issued by the Chief Justice of the Supreme Court of the District of Columbia, attested by the clerk of said court, and under the seal of the court. The clerk's name was signed by a rubber stamp; the warrant did not state any offense but ordered that the defendant, Issidore Passett, alias Harry Weise, "if he be found in your district," be taken and produced before the criminal court of such district immediately to answer the United States "touching the offense charged herein." Attached to said warrant was a certified copy of the indictment against Passett charging him with neglecting and refusing to provide for the support and maintenance of Wallace Passett, a minor child of the age of seven years, in destitute and necessitous circumstances, "contrary to the statute in such case made and provided against the peace and government of the United States." This copy of the indictment was certified by the clerk and also bore a certificate by the Chief Justice to the effect that the attestation of the clerk was in due form; also, a certificate of the clerk that the Honorable Walter I. McCoy, who had signed as Chief Justice, was the Chief Justice of said court, etc. The petitioner moved that he be discharged upon several grounds, among them being that the return showed that there was no predicate laid for the arrest of the petitioner, that the warrant was invalid, charged no offense, and that prosecution was barred by the statute of limitations of two years. The judge of the circuit court denied the motion and remanded the plaintiff in error to the custody of the sheriff.

In making laws for the District of Columbia, Congress acts as the legislative branch of the federal government, so

that such laws are laws of the United States. Cohens v. Virginia, 6 Wheat. (U. S.) 264; Lyons v. Bank, 154 Fed. 391; 18 C. J. 1358. Offenses in violation of the laws of the United States, applicable to the District of Columbia, and committed within such district, are crimes against the United States and not against the district. Benson v. Henkel, 198 U. S. 1; 18 C. J. 1360.

Section 1014 of the Rev. Stats. of U. S. provides a simple and orderly procedure for the arrest on complaint and affidavit, preliminary hearing, commitment and removal of a person charged with an offense against the laws of the United States, who is found in a federal district other than where the crime was committed or the prosecution is pending. This serves the same purpose for the federal courts as extradition proceedings where State offenders are involved. This statute is applicable to offenses committed in the District of Columbia. United States v. Price, 84 Fed. 636; 16 C. J. 338; U. S. Comp. Stats., 1916, Vol. 3, sec. 1674, and 1695; in re Price, 83 Fed. 830. The accused person is entitled to a preliminary examination to establish his identity and probable cause for his detention before warrant for his removal is issued by the district judge, such preliminary examination usually being held before a United States commissioner. It is only after a commitment upon the results of such examination that an order to remove him to the district in which the trial is to be held, can be made. 16 C. J. 341, and cases cited.

A bench warrant and the warrant of commitment after indictment should state the fact of indictment and the offense; it is sufficient, however, if it recites the fact of indictment and describes the offense generally. 16 C. J. 386. Whether the defect in a bench warrant or warrant of commitment, which fails to state the offense charged, as here, is cured by attaching thereto a copy of the indict-

ment, is a question which seems not to have been definitely decided. But it is unnecessary to now consider the question.

It is plain that this bench warrant and indictment only authorized an arrest by a United States marshal, or his deputy within the territorial jurisdiction of the court issuing it, as indicated by its language, that is, within the District of Columbia. It is too well settled to require citation of authority that a warrant of arrest issued in one state may not be executed in another state, for it has no validity beyond the boundaries of the state by whose authority it was issued. This principle is also applicable to federal warrants. See U. S. Comp. Stats. Vol. 2, sec. 1239, and cases cited on page 1912; also, Vol. 1 of same work, pages 1154, 1155, and cases cited, and modified exception to this rule in sec. 57 of the Judicial Code, as to suits pertaining to land located within the district. U. S. Comp. Stats.; Vol. 1, page 1165, *et seq.* This question was decided by the Court of Appeals of the District of Columbia in the case of Palmer v. Thompson, 20 App. Cas. D. of C. 273. The third headnote in the cited case, dealing with this question, reads as follows: "In the absence of an act of Congress conferring the power, a Federal court in one district has no authority to issue its writ to the marshal or any officer of another Federal district, commanding him to arrest a person within his jurisdiction but outside that of the court issuing the writ; and such power is not conferred either by Sec. 716, R. S. U. S. giving judges of Federal courts power to issue 'all writs not specifically provided for by statute, which may be necessary for the exercise of their respective jurisdictions and agreeable to the usages and principles of law;' nor by Sec. 1014, R. S. U. S., providing for the arrest of any criminal by the courts and officers of one jurisdiction for the purpose of his removal to another jurisdiction

for trial." This was a *habeas corpus* case appealed from the Supreme Court of the District of Columbia discharging Thompson from the custody of the United States marshal, and the decision of the lower court was affirmed. In the body of the opinion, it is said: "But, in the absence of specific statutory enactment to that effect, it is undoubtedly the general rule of law that no court has authority or jurisdiction beyond the territorial limits of the district for which it has been established, notwithstanding that it may be, as in the present case, only one of numerous similar courts of the same sovereignty. No court can by its writ impose a duty upon an officer outside of those limits. It may well be that, under exceptional circumstances, it may direct its own officer for some specific purpose to go outside of its own territorial limits; but we cannot understand how it can assume any authority under the general powers vested in it to issue its precept to the officer of another jurisdiction, when it has no power to enforce the performance of the duty. We do not mean to be understood as saying that Congress may not grant this authority. On the contrary, we think that Congress has the power to do so. But we do not find in the statute law the evidence that it has done anything of the kind. In our opinion neither section 1014 nor section 716 of the Revised Statutes purports to grant any such power. The provisions of section 1014 are certainly inconsistent with the theory of such a grant of power; and there is no good ground to construe the power granted in section 716, 'to issue all writs not specifically provided for by statute, which may be necessary for the exercise of their respective jurisdictions and agreeable to the usages and principles of law,' as intended to abolish the restrictions inherent in territorial limitation. The duties of the marshals of the United States, are prescribed by section 787 of the Revised Statutes, which

provides that 'it shall be the duty of the marshal of each district to attend the district and circuit courts when sitting therein, and to execute throughout the district all lawful precepts directed to him, and issued under the authority of the United States.' Evidently the lawful precepts to be executed by him are those issued by the courts sitting in his own district, and not those of the courts of other districts to which he is not amenable, and which he cannot attend.''

It therefore appears that the warrant with indictment attached, issuing from the Supreme Court of the District of Columbia, not only conferred no authority upon the sheriff of Dade County, Florida, to arrest the plaintiff in error, but it conferred no such authority upon the United States marshal for that federal district had he attempted to make such arrest thereunder.

It would appear from the foregoing that the plaintiff in error was unlawfully restrained of his liberty, and that he was clearly entitled to be discharged from custody, provided the said court before which the *habeas corpus* proceedings were brought had jurisdiction to that end.

This raises the very interesting and important question as to whether the judge of a state court has jurisdiction to entertain or act upon a writ of *habeas corpus* directed to a state officer, and that officer the sheriff who is an officer of the particular court before which the writ is pending, when the return of such officer shows that he is detaining the prisoner in custody under federal process, or under color of federal process. After diligent search, we do not find any case where the identical point presented by the facts of this case has ever been decided. The general proposition that a state court has no right to exercise jurisdiction in *habeas corpus* in behalf of a prisoner held by a federal officer under and by virtue of federal process and

authority, or color of it, is well settled; and it is no doubt this delicate question of jurisdiction which gave pause to the learned judge of the court below and caused him to refuse at the hearing, to grant the motion to discharge the prisoner.

The question here presented is not without difficulty, and in order to arrive at a solution thereof, it will be necessary to review some of the leading authorities bearing upon the general principles applicable to cases of this nature, which requires a brief visit, as it were, to one of the great battlefields of the law in this country. The development of the law on this subject has been a part of the prodigious contest which has been waged in the past history of this Union between the proponents of nationalism and localism, of federalism and States' Rights, of the liberal constructionists and the strict constructionists of the federal constitution, and between those great centripetal and centrifugal forces involved in our admirable but somewhat complex system of government. The development of the law on this subject to its present status has been closely intermingled with the political as well as juridical history of the American people. The state courts were divided on the subject, but most of them held for many years that the state courts had jurisdiction of *habeas corpus* proceedings regardless of the purported authority under which the petitioner was held, or whether by a state or federal officer. The text writers were also divided on the subject. This is not the time nor the place for an extended treatise on the history of this question, but the inquiring student of the law will find an interesting discussion, with copious citations of the authorities, in Church on Habeas Corpus, 2nd Edition, published in 1893, sections 79 to 86, the author denying the jurisdiction of the state courts; and in Hurd on Habeas Corpus, 2nd Edition, published in 1876, pages

154 to 198, in which the author contends for state court jurisdiction. In the early days, most of the cases seem to have arisen where state courts on *habeas corpus* released persons who had either been conscripted into the armies of the United States or who had deserted, where they were under the age of enlistment or otherwise not liable to conscription. Later on, a great many cases arose under the federal fugitive slave act, where persons who were prosecuted in the federal courts for aiding and abetting the escape of a fugitive slave were taken from the custody of federal officers and released by the state court judges in the northern states, in some cases for defects in process and in others because of the alleged unconstitutionality of the federal act. Not only were the state courts divided on this subject, but the United States circuit and district courts were likewise divided among themselves. The state courts of Massachusetts, Pennsylvania, New Jersey, Ohio, Wisconsin, Virginia, Iowa, and many others, contended strongly for state jurisdiction; in South Carolina and Alabama state jurisdiction was disclaimed, and in Georgia it was at first disclaimed and afterwards contended for. In New York, the question was at first waived. Chief Justice Kent alone disclaiming state jurisdiction. As above stated, Iowa disclaimed state jurisdiction, but in the case of *Ex Parte* Holman, 28 Iowa 88, where this question was decided, there appears in the dissenting opinion of Back, J., one of the most brilliant defenses of state jurisdiction to be found in all the literature on this subject. In the case of *Ex Parte* Kelley, 37 Ala. 474, state jurisdiction was disclaimed. This involved a question of the constitution of the Confederate States, the opinion being rendered in July, 1861, but in construing the Confederate constitution, Chief Justice Walker applied and followed the same principles as those announced by the Supreme Court of the United

States in the case of Ableman v. Booth, 21 How. 506, here-inafter referred to. This doctrine was adhered to in the case of *Ex Parte* Hill, 38 Ala. 429, wherein it was held that the courts and judicial officers of the State of Alabama had no jurisdiction on *habeas corpus* to discharge from the custody of an enrolling officer of the Confederate States, on the ground of physical incapacity for military service, persons who had been enrolled as conscripts under the acts of the Confederate Congress. This doctrine was somewhat modified in the case of Ex Parte Hill, in re Armistead v. Confederate States, 38 Ala. 458, Stone, J., writing the majority opinion, and Chief Justice Walker dissenting and filing a strong and luminous dissenting opinion. This was a battle of giants, Walker and Stone, along with Brickell and McClellan, being, perhaps, the outstanding figures of the nineteenth century in the long line of great jurists who have adorned the Supreme Court of Alabama. The doctrine contended for by Judge Walker seems to have been adhered to in the later case of *Ex Parte* Lee, 39 Ala. 457. Among the abler cases contending against state jurisdiction will be found *In re* Farrand, 8 Fed. Cas., p. 1070; *In re* Nagle, 39 Fed. 833; *In re* Copenhaver, 118 Mo. 377, 40 Am. St. Rep. 382. Among the strong cases contending for state jurisdiction will be found State v. Dimick, 12 N. H. 194, 37 Am. Dec. 197, with interesting annotations; McConologue's case, 107 Mass. 154; *In re Tarble*, 25 Wis. 390, 3 Am. Rep. 85; and *In re* Reynolds, 20 Fed. Cas. 592.

This question finally reached the Supreme Court of the United States in the celebrated case of Ableman v. Booth, 21 How. 506, 16 L. Ed. 169, decided in 1859. This was a case where Booth was charged, and afterwards convicted, in the District Court of the United States for the District of Wisconsin, with having aided and abetted, in said district, the escape of a fugitive slave. The marshal, who had

Booth in custody under a warrant issued by the United
States District Judge for that district, was brought before
a Justice of the Supreme Court of the State of Wisconsin
on a writ of *habeas corpus,* charging that Booth was unlaw-
fully restrained of his liberty by Ableman, the marshal,
under said warrant of commitment, because the fugitive
slave act of Congress was unconstitutional and void, and
that the warrant did not properly describe the offense cre-
ated by that act. Booth was discharged. The marshal ap-
pealed. Subsequently, Booth was indicted by the federal
grand jury and went to trial. He was convicted and sen-
tenced. He sued out another writ of *habeas corpus* before
the Supreme Court of Wisconsin and was discharged on
the ground that the federal act was unconstitutional. This
decision was brought for review before the Supreme Court
of the United States. The opinion in the case relates to
both appeals. It will be observed that in both instances,
the prisoner was in the custody of a United States Marshal
and under Federal process. In an exceedingly able opinion
by Chief Justice Taney, the conclusion was reached that no
state can authorize its judges or courts to exercise judicial
power, by *habeas corpus* or otherwise, within the jurisdic-
tion of another and an independent government that the
powers of the general government and of the state, although
both exist and are exercised within the same territorial
limits, are yet separate and distinct sovereignties, acting
separately and independently of each other, within their
respective spheres; that a state court or judge, who is
authorized by the laws of the state to issue the writ of
*habeas corpus,* may issue it in any case where the party is
imprisoned within its territorial limits, provided it does
not appear, when the application is made, that the person
imprisoned is in custody under the authority of the United
States; that the court or judge has a right to inquire for

what cause and by what authority the prisoner is confined within the territorial limits of the state sovereignty, and that it is the duty of the marshal or other person having custody of the prisoner, to make known to the court or judge, by a proper return, the authority by which he holds him in custody; that no state judge or court, after they are judicially informed that the party is imprisoned under the authority of the United States, has any right to interfere with him or to require him to be brought before them. Such is the language of some of the headnotes, and in the opinion it is said: ''If the authority of a state, in the form of judicial process or otherwise, should attempt to control the marshal or other authorized official or agent of the United States, in any respect, in the custody of his prisoner, it would be his duty to resist, and to call to his aid any force that might be necessary to maintain the authority of law against illegal interferences. No judicial process, whatever form it may assume, can have any lawful authority outside of the limits of the jurisdiction of the court or judge by whom it is issued; an attempt to enforce beyond these powers is nothing less than lawless violence.''

The question was again presented to the Supreme Court of the United States in the case of United States v. Tarble, 13 Wall. 397, 20 L. Ed. 597, in which the decision in Ableman v. Booth was approved and followed. Chief Justice Chase dissented. The rule as stated in this case is as follows: ''If upon the application for the writ, it appears that the party alleged to be illegally restrained of his liberty is held under the authority or claim and color of authority of the United States *by an officer of that government,* the writ should be refused. If this fact do not thus appear, the state judge has the right to inquire into the cause of imprisonment, and ascertain by what authority the person is held within the limits of the state; and it is

the duty of the marshal or other officer, having the custody of the prisoner, to give by a proper return, information in this respect. But after he has been fully apprised by the return that the party is held *by an officer of the United States* by the authority or claim and color of authority of the United States, he can proceed no further.'' (Italics ours.) In other words, although in such a case the detention is in fact illegal, the state court cannot determine that question, but must leave the legality of the imprisonment for the courts or judicial officers of the United States to settle.

It will be observed that it has never yet been held by the Supreme Court of the United States, or any other federal court so far as the writer has been able to ascertain, that the state court has no jurisdiction when the detention is by a *state officer* under color of, but without actual, federal authority.

After a review of this question, with copious citations of authorities, it is said, in 29 C. J. —, p. 124: ''When the detention is exercised by state officers under color of federal authority, state courts may entertain habeas corpus proceedings,'' citing under this head Com. 1. Holloway, 5 Binn. (Pa.) 512; *Ex parte Pool,* 2 Va. Cas. (4 Va.) 276.

In this case, the return showed that the petitioner was held in custody by a state officer, to-wit, a sheriff, an officer of the court before which the *habeas corpus* proceedings was pending, under a warrant which was, to all intents and purposes, utterly null and void as constituting any authority for such arrest and detention, and that the state officer had made the arrest and was detaining the prisoner, not under the authority of the United States, but contrary to its laws. The warrant in this case could hardly be said to constitute color of authority. While it would not have authorized the United States marshal of the district to

arrest the petitioner, if the arrest had been made, and the custody of the petitioner held, by such officer of the United States, we do not think the state court should have entertained or exercised any further jurisdiction, after ascertaining such fact, except to dismiss the petition and remand the petitioner to the custody of such marshal. But surely a state court has jurisdiction to discharge on *habeas corpus* a person held in custody by a state officer who is entirely without any lawful authority from the federal government to detain him; and especially so where the court before whom the *habeas corpus* proceedings is pending is dealing with an officer of that court.

In the case of Robb v. Connelly, 111 U. S. 624, it was contended that an agent appointed by the state in which a fugitive from justice stands charged with crime, to receive such fugitive from the state by which he is surrendered, was an officer of the United States, and that a federal court had jurisdiction to release the prisoner under a writ of *habeas corpus*. In that case, the meaning of the decision in the case of Ableman v. Booth, *supra,* was construed as follows: ''All that is meant by the language used is, that the state judge or state court should proceed no further when it appears from the application of the party, or by return made, that the prisoner is held *by an officer of the United States* under what, in truth, purports to be the authority of the United States; that is, an authority, the validity of which is to be determined by the constitution and laws of the United States. If a party thus held be illegally restrained, it is for the court or judicial officers of the United States and those courts or officers alone, to grant him release,'' (quoting from the former case of *In re* Tarble, supra.) It was held in this case that the agent of the demanding state in an extradition proceeding, although such proceeding was under and by virtue of an act of Con-

gress, was not an officer of the United States within the meaning of the cited cases. Quoting from the opinion: ''He is not appointed by the United States and owes no duty to the National Government, for a violation of which he may be punished by its tribunals or removed from office. His authority, in the first instance, comes from the state in which the fugitive stands charged with crime. He is, in every substantial sense, her agent, as well as in receiving custody of the fugitive, as in transporting him to the state under whose commission he is acting.'' In this case, Robb sued out writ of *habeas corpus* before a state court in California, contending that the governor's warrant of extradition was not valid. He was in the custody of the agent of the demanding state. The federal Supreme Court held that Robb was not in the custody of an officer of the United States and that although the extradition proceedings were had under and by virtue of an act of Congress, the state court had jurisdiction to inquire into the legality of his detention. Towards the close of the opinion in this case, occurs the following language: ''And, since the alleged fugitive was not, at the time the writ in question issued, in the custody of the United States, by any of their tribunals or officers the court or judge issuing it did not violate any right, privilege or immunity secured by the constitution and laws of the United States, in requiring the production of the body of the fugitive upon the hearing of the return to the writ, to the end that he might be discharged if, upon hearing, it was adjudged that his detention was unauthorized by the act of Congress providing for the arrest and surrender of fugitives from justice, or by the laws of the state in which he was found.''

In the case of Kurtz v. Moffitt, 115 U. S. 487, 29 L. Ed. 458, it was held that a state court has authority of a *habeas corpus* proceeding in behalf of a person who has been ar-

rested, either by a police officer of a state, or a private citizen, without a warrant, on the charge of being a deserter from the United States Army.

It must be remembered that underlying the consideration of the question before us is the principle that jurisdiction in *habeas corpus* is granted to the federal courts only in certain cases, by virtue of our federal constitution and statutes, whereas the state tribunals are vested with all the broad common-law power and jurisdiction under this ancient writ to inquire into all sorts of unlawful detentions excepting only in so far as that power and jurisdiction has been limited in the narrow respect above pointed out, by our national constitution and laws as construed by the nation's highest court. Hurd on Habeas Corpus, 154; Church on Habeas Corpus, 105, 117; 29 C. J. 124.

*Prima facie,* a state officer is not an officer of the federal courts and is possessed of no authority to serve their process, and when he assumes to arrest and detain a person for a claimed violation of federal law, in order to justify his action he must show that he has been legally vested with the authority of the United States to perform such act. And whether or not he is acting under the authority of the United States, pursuant to its laws, is a question which may be inquired into by a state court when one of its officers is presuming to so act. Not only the validity of the process, but *the authority of the state officer to execute it,* are vital questions when the right of a state officer to arrest and restrain a person of his liberty is brought before a state court under the powerful writ of *habeas corpus.* This principle is in entire harmony with that broad spirit of comity and mutual respect for the jurisdiction of each for the other which should obtain in all cases where the respective spheres of National and State court jurisdiction are either actually or apparently involved.

We conclude, therefore, that, as the return showed that the petitioner was held in custody by a state officer under a purported federal warrant which had no efficacy outside of the District of Columbia and was null and void so far as concerned its power to confer any authority upon such state officer to arrest or hold the petitioner, the court below had jurisdiction, and had the power, and it was, therefore, its duty, to grant the prayer of the petitioner and to dischage him from custody.

The final order of the court below is therefore reversed, and the cause remanded with directions to enter an order discharging the petitioner, plaintiff in error here, from custody.

ELLIS AND STRUM, J. J., concur.

WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J., concur in the Opinion.