Ex Parte Juan Antonio Corretjer, Petitioner.

No. 105. Submitted June 16, 1936.—Decided June 18, 1936.

*P. Albizu Campos, Gilberto Concepción de Gracia, Juan Valldejuli Rodríguez, Federico Virella* and *J. M. Toro Nazario* for petitioner.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

Juan Antonio Corretjer, by his attorneys, filed with this Supreme Court on Thursday, June 11 of this year, a petition for a writ of habeas corpus alleging substantially that he was imprisoned in the San Juan district jail under the custody of its Warden Andrés A. Lugo, having been conducted there by Donald A. Draughon and Stanley Sheppard, marshal and deputy marshal respectively, of the District Court of the United States for Puerto Rico by virtue of a warrant of

imprisonment issued by Robert A. Cooper in his capacity as judge of the said court.

He describes his detention and imprisonment as illegal and continues stating the facts which culminated in the judgment rendered by the Federal Court finding him guilty of contempt and sentencing him to a year of imprisonment in the San Juan District jail.

He states his grounds for maintaining that his imprisonment is illegal, he invokes the jurisdiction of this Court to issue writs of habeas corpus, he makes reference to the refusal of the District Court of San Juan to issue a writ in this same case, he calls attention to certain acts of the President and his cabinet and to the introduction of a certain bill in the Senate of the United States in relation to this Island, and ends by requesting that Warden Lugo be ordered to bring the petitioner before this court for an investigation of the grounds for his imprisonment, and that he be released under bail in the meanwhile.

The petition was considered by the entire court on the morning of June 12, and our first impression was to deny it outright, especially after having read the reasoned opinion of Judge De Jesús of the District Court of San Juan refusing to issue the writ.

However, since the exercise of the right of habeas corpus is involved and since there are no precedents in this Court, we preferred to hear counsel for the petitioner in writing on the question of jurisdiction involved and granted a term of four days for this purpose. A brief was accordingly filed, which we have carefully studied but which does not change our first impression.

■ By virtue of the Treaty of Paris between the United States of America and Spain, proclaimed in Washington on April 11, 1899, Spain ceded to the United States the Island of Puerto Rico which the United States governed under military rule until the first of May, 1900, when the first

Organic Act enacted by Congress and approved on April 12, 1900 (31 Stat. at L., p. 77, Comp. 6611–6651) went into effect.

From that time Puerto Rico became an organized American territory, although not incorporated into the body of the Union.

Section 33 of the constitution of the territory provided that the judicial power should be vested in the courts and tribunals of Puerto Rico already established and in operation, under and by virtue of general orders of the military government, among them this Supreme Court.

Section 34, immediately following, provided that Puerto Rico should constitute a judicial district to be called "the district of Puerto Rico", and that the President should appoint a district judge, a district attorney, and a marshal for said court, to be known as the "district court of the United States for Puerto Rico"—the successor to the United States provisional court established by the military government—with the same jurisdiction as the district courts of the United States. The said Section also provided that "the laws of the United States relating to appeals, writs of error and certiorari, removal of causes, and other matters and proceedings as between the courts of the United States and the courts of the several States shall govern in such matters and proceedings as between the district court of the United States and the courts of Puerto Rico."

Section 35 regulated writs of error and appeals from the final decisions of the Supreme Court of Puerto Rico and the district court of the United States to the Supreme Court of the United States.

Thus was established in this island, not only from the time that the Congress gave it a territorial form of civil government but from the time it was occupied governed under military rule, a system of courts of justice similar if not identical to that of the Federal and State courts in force in the United States of America.

The second Organic Act—approved on March 2, 1917—preserved the territorial form of government with its Insular and Federal courts of justice, making it in some ways even more harmonious with the genuinely North American form of government.

In view of this, we must and do conclude that the decisions of the continental courts on similar questions are applicable to this case.

Some discrepancy may be noted in those decisions before the Supreme Court intervened. Afterwards, the fields of jurisdiction of the State and territorial courts of the Union and of the Federal courts were so clearly and definitely set out, that it is hardly conceivable that any conflict should arise.

Almost ninety years ago the Supreme Court of the nation, through Chief Justice Roger B. Taney, in the cases of *Ableman* v. *Booth* and *United States* v. *Booth,* 62 U.S. 506, 523, 524, expressed itself as follows:

"We do not question the authority of State court, or judge, who is authorized by the laws of the State to issue the writ of *habeas corpus,* to issue it in any case where the party is imprisoned within its territorial limits, provided it does not appear, when the application is made, that the person imprisoned is in custody under the authority of the United States. The court or judge has a right to inquire, in this mode of proceeding, for what cause and by what authority the prisoner is confined within the territorial limits of the State sovereignty. And it is the duty of the marshal, or other person having the custody of the prisoner, to make known to the judge or court, by a proper return, the authority by which he holds him in custody. This right to inquire by process of *habeas corpus,* and the duty of the officer to make a return, grows, necessarily, out of the complex character of our Government, and the existence of two distinct and separate sovereignties within the same territorial space, each of them restricted in its powers, and each within its sphere of action, prescribed by the Constitution of the United States, independent of the other. But, after the return is made, and the State judge or court judicially apprized that the party is in custody under the authority of the United States, they can proceed no further. They then know

that the prisoner is within the dominion and jurisdiction of another Government, and that neither the writ of *habeas corpus,* nor any other process issued under State authority, can pass over the line of division between the two sovereignties. He is then within the do- minion and exclusive jurisdiction of the United States. If he has committed an offense against their laws, their tribunals alone can punish him. If he is wrongfully imprisoned, their judicial tribunals can release him and afford him redress. And although, as we have said, it is the duty of the marshal, or other person holding him, to make known, by a proper return, the authority under which he detains him, it is at the same time imperatively his duty to obey the process of the United Stats, to hold the prisoner in custody under it, and to refuse obedience to the mandate or process of any other Gov- ernment. And consequently it is his duty not to take the prisoner, nor suffer him to be taken, before a State judge or court upon a *habeas corpus* issued under State authority. No State judge or court, after they are judicially informed that the party is imprisoned under the authority of the United States, has any right to interfere with him, or to require him to be brought before them. And if the au- thority of a State, in the form of judicial process or otherwise, should attempt to control the marshal or other authorized officer or agent of the United States, in any respect, in the custody of his prisoner, it would be his duty to resist it, and to call to his aid any force that might be necessary to maintain the authority of law against illegal interference. No judicial process, whatever form it may assume, can have any lawful authority outside of the limits of the jurisdiction of the court judge by whom it is issued; and an attempt to enforce it beyond these boundaries is nothing less than lawless violence.''

Some years later it was sought to limit the above doc- trine to cases where a prisoner is held under the undis- puted authority of officials of the Federal government, thus opening the door for the State courts to intervene and deter- mine this point, and the matter was again taken to the Supreme Court which, through Justice Stephen J. Field, emphatically rejected the limitation, stating:

''Some attempt has been made in adjudication, to which or our attention has been called, to limit the decision of this court in *Ableman v. Booth,* and *The United States* v. *Booth,* to cases where a prisoner is held in custody under undisputed lawful authority of the United

States, as distinguished from his imprisonment under claim and color of such authority. But it is evident that the decision does not admit of any such limitation. It would have been unnecessary to enforce, by any extended reasoning, such as the Chief Justice uses, the position that when it appeared to the judge or officer issuing the writ, that the prisoner was held under undisputed lawful authority, he should proceed no further. No Federal judge even could, in such case, release the party from imprisonment, except upon bail when that was allowable. The detention being by admitted lawful authority, no judge could set the prisoner at liberty, except in that way, at any stage of the proceeding. All that is meant by the language used is, that the State judge or State court should proceed no further when it appears, from the application of the party, or the return made, that the prisoner is held by an officer of the United States under what, in truth, purports to be the authority of the United States; that is, an authority, the validity of which is to be determined by the Constitution and the laws of the United States. If a party thus held be illegally imprisoned it is for the courts or judicial officers of the United States, and those courts or officers alone, to grant him release.'' Tarble's Case, 13 Wall. 397, 410, 411.

Consequently, since the petitioner's own petition shows that he is imprisoned by virtue of a sentence of the judge who presides over the District Court of the United States for the District of Puerto Rico, executed by the Marshal of the same, this Supreme Court has no right to intervene in the matter.

The administration of justice does not suffer any interruption or damage. It is simply held that the work of giving the petitioner his due does not correspond in this case to the insular courts. It corresponds to the Federal courts whose background of impartiality as well as strength is well known to all.

We should say nothing further. The question decided is the fundamental one involved. All of the other questions raised lack a solid basis.

It is true that Congress—Section 48 of the Organic Act as amended on March 4, 1927—authorized this Supreme Court and the District Courts of Puerto Rico and the respec-

tive judges of the same to issue writs of habeas corpus ''in all cases in which the same are grantable by the judges of the District Courts of the United States'', but this power can be construed only as a rule for the different situations in which the insular courts, within their own field of action, may and might act, even though there should be no act of the Legislature of Puerto Rico on the matter.

A construction which would permit the Insular Courts and their judges to invade the field occupied by the Federal Court, sanctioned and regulated by the Organic Act itself; would pervert the existing judicial system and would create serious conflicts. Not only would such a construction be contrary to the general spirit of the Organic Act in force; but it would also be contrary to the express provision of Section 42 of the same Act; to wit:

''That the laws of the United States relating to appeals, writs of error and *certiorari*, removal of causes, and other matters or proceedings as between the courts of the United States and the courts of the several States shall govern in such matters and proceedings as between the district court of the United States and the courts of Porto Rico.''

The introduction of a bill in the Senate, although its approval be recommended by the Executive Power, does not make such a bill law, nor does it affect the status of the laws in force, which regulate acts done within their purview. The allegations of the petition in this respect can therefore have no influence on the decision of this case.

The brief presented lays emphasis on the fact that the official who now has the custody of the petitioner is not a Federal but an Insular official. The authority of 29 C. J. 124 is invoked: ''When the detention is exercised by state officers under color of Federal authority, state courts may entertain habeas corpus proceedings.''

The complete paragraph is as follows:

''The jurisdiction to issue writs of habeas corpus vested in the state courts by state laws does not extend to the discharge from cus-

tody of persons held by officers of the United States under color of authority of the laws of the United States, although formerly many state courts upheld the rule that state courts might, in habeas corpus proceedings, determine the legality of detention by federal authority. Even though the detention is in fact illegal, the legality of the imprisonment is for the courts or judicial officers of the United States to determine. Where it does not appear in the application that the detention is by federal authority, the state court may issue the writ and proceed with the inquiry sufficient to satisfy itself of the nature of the authority for the detention. When the detention is exercised by state officers under color of federal authority, state courts may entertain habeas corpus proceedings.'' 29 C. J. 123, 124.

As may be seen, the authority cited does not have the scope claimed by the petitioner. The question has also been clearly decided against his contention in *Ex parte Le Bur*, 49 Cal. 159, 162, in which case Chief Justice William T. Wallace of the Supreme Court of California expressed himself, in part, as follows:

''The prisoner is detained in custody by the authorities of the Government of the United States, by virtue of the judgment rendered by the United States Court in Oregon, and it is not claimed that the term of his imprisonment has expired. The circumstance that he is imprisoned at the State Prison and in the keeping of its warden is of no import in this respect, for these are but the agencies and means of his confinement adopted by the United States by the consent of the State.

''The petitioner being a prisoner held by the authorities of the Government of the United States, by virtue of the judgment of a Federal Court of exclusive jurisdiction in the case, it is duty under the statutes of the State to remand him. (Penal Code, Sec. 1, 486.)''

The case of *Passett* v. *Chase*, 107 So. 689, decided by the Supreme Court to Florida on March 18, 1926, on which the petitioner relies so strongly, is quite different from the instant case.

In that case Isidore Passett was arrested by the sheriff of Date County in the state of Florida, and imprisoned in the Miami, Florida jail. He requested a writ of habeas corpus from the circuit court of the county and the return

showed that the prisoner was being held by virtue of a warrant issued by the Chief Justice of the Supreme Court of the District of Columbia which did not describe any offense but ordered that the defendant Passett be arrested "if to be found in your district" and taken before the criminal court of the said district to answer for the offense of which he was accused. Attached to the warrant was a copy of the complaint filed against the petitioner for having refused to support the seven-year-old minor Wallace Passett "contrary to the statute in such case made and provided and against the peace and government of the United States."

The writ was refused and the petitioner appealed to the Supreme Court of the state which reversed the denial and returned the case to the court of its origin with instructions to release the petitioner.

On these facts the state Supreme Court established the following doctrine:

"A bench warrant, issued by the Supreme Court of the District of Columbia, and addressed to the marshal of such District, confers no authority upon the marshal of the United States District Court for the Southern District of Florida, or the sheriff of any county within such district, making arrest thereunder."

"A state court has no right to entertain or exercise jurisdiction in habeas corpus in behalf of a prisoner held by a federal officer under and by virtue of federal process and authority or the color of it."

"If, upon application to a state court for a writ of habeas corpus, it appears that the party alleged to be illegally restrained of his liberty is held under the authority or claim and color of authority of the United States by an officer of that government, the writ should be refused. If this fact do not thus appear, the state judge has the right to inquire into the cause of imprisonment and ascertain by what authority the person is held within the limits of the state, and it is the duty of the marshal or of the federal officer having the custody of the prisoner to give, by a proper return, information in this respect. But, after the state judge has been apprised by the return that the party is held by an officer of the United States by the authority, or under color of authority, of the United States, he can

proceed no further, but must leave the question of the illegality of the imprisonment for the determination of the courts or judicial officers of the United States.''

''But the state court has jurisdiction in habeas corpus in cases where the person alleged to be unlawfully restrained of his liberty is held in custody by a state officer under color of, but without actual, federal authority; and, where it appears that such is the case, and that such state officer is restraining such person under void federal process which vest no authority upon him to arrest or hold such person in custody, the state court has the power and jurisdiction, and it becomes its duty, to order the discharge of the prisoner from such unlawful custody; and especially so where, as in this case, the state court before whom the habeas corpus proceedings is pending is dealing with an officer of such court.''

As may be seen, the fundamental principle finally fixed by the Supreme Court of the United States is recognized and fully applied. This may be even more clearly seen by read-ing the extensive opinion of the court rendered by its Chief Justice Armstead Brown.

The state court could and should have intervened in that case because the warrant issued in the District of Columbia was not valid in Florida. There a person was detained in a state jail by a state sheriff by virtue of a warrant issued outside the state, while here a person is detained by the mar-shal of a Federal court, by virtue of a sentence rendered by the said court; in a local jail located within the court's own district. Under these circumstances it is not the rule of the Florida case but that of the California case which we have copied which governs.

█ Finally, it seems well to clarify that a court or judge to whom a petition for habeas corpus is presented is not bound to issue the writ when fully convinced by the allega-tions of the petition itself that it should not be issued.

The law is so strong, it so vigorously consecrates the right of citizens not to be deprived of their liberty except in accordance with the said law, that it expressly provides (Sec-tion 500 of the Code of Criminal Procedure) that if any

judge, after a proper application is made, refuses to grant an order for a writ of habeas corpus, or if the officer or person to whom such writ may be directed refuses obedience to the command thereof, he shall forfeit and pay to the person, aggrieved a sum not exceeding one thousand dollars, to be recovered by action in any court of competent jurisdiction, but the law itself provides (Section 472 of the Code of Criminal Procedure) that any court or judge authorized to grant the writ, to whom a petition therefor is presented, must, *if it appear that the writ ought to issue,* grant the same without delay. If it does not so appear, as we have seen it does not in this case, it is the clear duty of the court to deny the writ.

An order must be entered denying the petition for a writ of habeas corpus, for want of jurisdiction.

Mr. Justice Córdova Dávila took no part in the decision of this case.