100 So.2d 149 (1958)
Application of the PEOPLE OF THE STATE OF NEW YORK for an Order Requiring Joseph C. O'NEILL to Attend and Testify Before the Grand Jury of the County of New York, State of New York.
Supreme Court of Florida.
January 22, 1958.
Rehearing Denied February 24, 1958.
*151 Richard W. Ervin, Atty. Gen., Reeves Bowen, Asst. Atty. Gen., and Frank S. Hogan, Dist. Atty., New York County, New York City, for appellant.
L.J. Cushman, Miami, for appellee.
THOMAS, Justice.
On 23 April 1956 there was filed in the Circuit Court of Dade County, Florida, the certificate of Honorable Mitchell D. Schweitzer, Judge of the Court of General Sessions of the State of New York, reciting that he had read an affidavit signed by an Assistant District Attorney of the County of New York, recommending that one Joseph C. O'Neill be taken into custody and delivered to an officer of the State of New York to assure his attendance there and that the witness, O'Neill, be brought immediately before the Florida court for hearing on the matter of extradition.
It was stated in the certificate that the District Attorney had been conducting before a grand jury an investigation of the use of funds of certain labor unions and the activities of union officials in the handling of such monies. The grand jury was undertaking to determine whether or not union officials and representatives had conspired to steal funds belonging to the unions in violation of Secs. 580 and 1290 of the Penal Law of New York, McKinney's Consol.Laws, c. 40.
In the certificate O'Neill was designated a material and necessary witness in the investigation. He was described as General President of the Distillery, Rectifying, Wine and Allied Workers' International Union of America, Chairman of the Executive Board, and Chairman of the Social Security Department which administers the welfare fund of the union. The grand jury purposed to learn from him about disposition of the union's funds.
According to the judge's certificate efforts to procure the attendance of O'Neill had been unsuccessful and he had refused to appear voluntarily and testify. Inasmuch as he resided in Illinois, in which no reciprocal witness statute has been enacted, the office of the District Attorney could not compel his presence.
Continuing, it was stated that the District Attorney learned that a convention of the union would be held in Miami 23 April 1956 and that under the constitution of the union the president, O'Neill, was required to be present and preside.
By the certificate O'Neill was assured of protection from arrest or service of civil and criminal process in connection with matters arising before his entrance into New York should he appear under court order.
We see no occasion to give a summary of the statements in the affidavit of the Assistant District Attorney as they seem harmonious with the ones appearing in the judge's certificate which contains sufficient information for determination of the points in controversy.
There was incorporated in the affidavit the request that the court under Sec. 618-a of the New York Code of Criminal Procedure issue the certificate we have described.
Upon the filing of the certificate in the Circuit Court of Dade County the judge ordered the sheriff to attach O'Neill and bring him forthwith before the court to show cause why an order should not immediately issue for his custody and his delivery to an officer of the State of New York. Evidently the same day the certificate was filed O'Neill was apprehended and gave bond, although there is no provision in our statute, Sec. 942.02, Florida Statutes 1955, F.S.A., for such a bond.
A month later O'Neill filed a response and after another month had passed a hearing was held by the circuit judge when arguments of Assistant District Attorneys *152 from New York and O'Neill's counsel were presented but at which no testimony was taken. Subsequently the judge, basing his opinion on the record, concluded that Sec. 942.02, supra, was unconstitutional because by it the state was given extraterritorial jurisdiction, the right of ingress and egress across the state line was impaired and the witness could be taken into custody here and delivered into custody of an officer of another state without bail. Also, the judge thought the certificate of the Judge of the Court of General Sessions of New York and the affidavit of the Assistant District Attorney did not depict a situation showing that O'Neill was a material and necessary witness.
We dismiss the last point with the observation that it is plain to us O'Neill is a material and necessary witness in the investigation of the misuse of funds of the union. By the terms of the act, the certificate of the judge must be taken as "prima facie evidence of all the facts stated therein." It may be logically deduced that because of the positions held by O'Neill he is familiar with the funds of the organization if, indeed, he does not supervise or control them, and we think that in an investigation of the administration of those funds he would prove a material and necessary witness.
It is stated in the brief of the Attorney General that the "appellant" filed a notice of appeal and filed "its" assignments of error and "its" directions to the clerk.
Upon an examination of the record, we find that the notice of appeal was filed by "The Applicant, the People of the State of New York" and that it, the assignments of error and the directions to the clerk, carried the names of the District Attorney of New York County, the Attorney General of Florida, the State Attorney of the Eleventh Judicial Circuit and an Assistant State Attorney but were signed only by the Assistant State Attorney. On the notice of appeal these officers were described as attorneys for "applicant" and on the assignments of error and directions to the clerk, as attorneys for "appellant".
Soon after the appeal was lodged here the attorney for Joseph C. O'Neill moved to dismiss it, and the members of the court sitting at the time deferred a ruling until hearing of the cause on the merits.
We have now reconsidered the motion and have concluded we should proceed to a determination of the dispute on the merits, that is, the adjudication of the validity of Sec. 942.02, supra. The motion was based on the ground that this court had no jurisdiction because the order attempted to be reviewed was entered in a criminal proceeding and the state had no right to appeal except from orders specified in Sec. 924.07, Florida Statutes 1955, F.S.A., of which the order of the circuit judge was not one, and further that the People of the State of New York had no right of appeal. The Attorney General countered on the ground that the case was a civil proceeding and asked this court to consider the appeal a petition for certiorari, under Sec. 59.45, Florida Statutes 1955, F.S.A., if it appeared that the appeal had been improvidently taken.
We agree with the Attorney General that the proceeding is not criminal and that appeal was the proper method of review as, by Sec. 5 of Art. V of the Constitution, F.S.A., this court had "appellate jurisdiction in all cases at law * * * originating in Circuit Courts * * *." The case originated in the circuit court and the appeal was filed before the effective date of the amendment of Art. V adopted in November 1956.
The procedure followed by the Attorney General is rather unusual because the record does not show any participation by him until the circuit judge had ruled. His name first appears on the notice of appeal. But the State of New York, in our opinion, had the right to appeal as O'Neill would have had if the judgment had been unfavorable to him. The appeal became *153 effective when the notice was filed by the District Attorney of New York County. The introduction of the Attorney General into the controversy was somewhat unorthodox but in view of the mandate in Sec. 22 of Art. IV of the Constitution that he "perform such other legal duties as may be prescribed by law" and the requirement of Sec. 16.01, Florida Statutes 1955, F.S.A., that he "appear in and attend to in behalf of the state, all suits or prosecutions, civil or criminal, or in equity, in which the state may be a party, or in any wise interested * * *" we will consider his entrance via the notice of appeal an effort to present the interest of the state in the preservation of the statute. This concern of the state in maintaining the validity of the law comes from the law's reciprocal nature. If the act is held unconstitutional, then, of course, the attendance here of witnesses residing in states having such a uniform act cannot be accomplished.
The act is known as the "`uniform law to secure the attendance of witnesses from within or without a state in criminal proceedings,'" Sec. 942.06, Florida Statutes 1955, and F.S.A., and is "only applicable to such state as shall enact reciprocal powers to this state relative to the matter of securing attendance of witnesses" as provided in it. Sec. 942.05, Florida Statutes 1955, F.S.A. It was enacted in New York, Code of Criminal Procedure 618-a, supra.
We return now to the procedure outlined. If it is recommended in the certificate that the witness be taken into immediate custody and delivered to an officer of the state making the request, the judge may, instead of notification of the hearing, order the witness brought before him at once. Such a recommendation was made in this case and such an order was initially entered. It is provided in the act that if at the hearing the custody and delivery appear to the resident judge `desirable', he may order the witness placed in custody and delivered to an officer of the state making the request.
Evidently The People of the State of New York intended by the certificate of the judge to coerce the attendance of O'Neill by one process or the other but preferred to have the witness taken into custody. When the circuit judge in Dade County entertained the certificate, two courses were available. He could have notified the prospective witness of a hearing to determine whether or not the witness should be subpoenaed to testify before the grand jury in New York. On the other hand, in view of the recommendation that the witness be taken into custody, the judge could have directed that the witness be immediately brought before him and then, if the judge was "satisfied of the desirability" that the witness should be placed in custody and delivered to an officer of the State of New York, he could have followed that procedure instead of issuing a subpoena.
The latter course seems to have been first chosen by the circuit judge, but upon hearing he decided not to put O'Neill in custody or place him under summons because of his conviction that the whole act was invalid.
In the circumstances it seems to be our obligation to decide the constitutionality of Sec. 942.02, supra, whether the procedure be to seize and deliver a witness or to place him under subpoena. We will discuss the two aspects in that order.
Certain salient facts should be remembered in judging the merits of the act as it would operate on O'Neill. He is not charged with crime. On the contrary, it is stated in the judge's certificate that the laws of New York would guarantee O'Neill, if taken there pursuant to this proceeding, protection from arrest and the service of criminal process. Parenthetically, this assurance was given in the certificate but it is extremely doubtful if the act itself provides for such a safeguard, except in the case where a summons is issued as distinguished from seizure and delivery of the witness.
*154 Although the uniform law was adopted by The National Conference of Commissioners on Uniform State Laws more than a quarter century ago and, incidentally, enacted by this State in 1941, there is a dearth of judicial decision on its operation and validity.
It appears from the opinion of the circuit judge and the brief filed by the appellee that but one court has passed directly upon the provisions of the act attempting to authorize the summary procedure, namely, a District and County Court of Pennsylvania in In Re Allen, 49 Pa.Dist. & Co.R. 631. The court seems to have primarily considered the title of the act under attack, but it did declare the provisions for seizure of a witness and his delivery to the officer of a foreign state invalid because they violated Sec. 2 of Art. IV and the privileges and immunities provision of the Fourteenth Amendment of the Federal Constitution. The Constitutionality of the uniform act was considered in In Re Cooper, 127 N.J.L. 312, 22 A.2d 532, and in In Re Saperstein, 30 N.J. Super. 373, 104 A.2d 842, but in neither of these was the validity of the particular provisions for seizure and delivery of a witness specifically determined. In the former it was contended that the title of the act was not sufficient to make a witness for a defendant subject to its provisions with reference to the issuance of subpoenas. It is true that the provisions for seizure of a witness were assailed but clearly no attempt to invoke them had been made. In the latter decision the points presented were not the same as those we are considering.
By the Fourteenth Amendment of the Constitution of the United States the states are enjoined from making or enforcing "any law which shall abridge the privileges or immunities of citizens of the United States * * *." It also contains the guarantee that a state shall not deprive a person of liberty "without due process of law." And in the first paragraph of Sec. 2 of Art. IV of the Constitution is incorporated the guarantee that also seems immediately involved in the question whether or not a person who is not charged with crime of any sort may be restrained of his freedom because he is needed elsewhere as a witness in an investigation by a grand jury. Not only are the privileges and immunities of citizens of the United States placed beyond the power of the state to impair but citizens of each state are vouchsafed the privileges and immunities of the citizens of all the states. The following paragraph of Sec. 2 of Art. IV gives emphasis to the preceding one and forms an exception to it for such privileges and immunities are not guaranteed to the person charged with "Treason, Felony, or other Crime" who flees from justice. The state to which he flees must deliver him up "on Demand of the executive Authority of the State from which he fled * * *."
We agree with the circuit judge that the right of O'Neill to ingress and egress would be impaired if not destroyed if the circuit judge were to order his seizure, as was `recommended'. He would no longer have been allowed freely to pass from the State of Florida to another state but would have been taken to New York whether or not he wished to go there and he would have been prevented from returning to his home state of Illinois although it is quite clear that he came to this state for a visit of but a few days to attend a convention.
We think the provisions of the Fourteenth Amendment forbad the passage by the legislature of Florida of a law which would so interfere with the movement of a citizen of the United States who as a citizen of Illinois was privileged to move freely from his state to Florida and back. This privilege would have been nullified, of course, had he become a fugitive from justice which is not the case.
In Twining v. State of New Jersey, 211 U.S. 78, 29 S.Ct. 14, 18, 53 L.Ed. 97, it was written: "Privileges and immunities of citizens of the United States, on the *155 other hand, are only such as arise out of the nature and essential character of the national government, or are specifically granted or secured to all citizens or persons by the Constitution of the United States. Slaughter-House Cases, supra, [16 Wall. 36], at page 79 [21 L.Ed. 394]; Re Kemmler, 136 U.S. 436, 448, 10 S.Ct. 930, 34 L.Ed. 519, 524; Duncan v. State of Missouri, 152 U.S. 377, 382, 14 S.Ct. 570, 38 L.Ed. 485, 487. Thus, among the rights and privileges of national citizenship recognized by this court are the right to pass freely from state to state (Crandall v. State of Nevada, 6 Wall. 35, 18 L.Ed. 745); * * *."
We think that operation of the statute in question would constitute a definite interference with the right of a citizen of the state and of the United States to move freely from one state to another, and we think of no better illustration than what would have occurred in this case had the circuit judge accepted the `recommendation' and found it `desirable' to send O'Neill to New York in custody. A Citizen of Illinois, comes to Florida for a brief visit; he is haled into court and confronted with an order placing him in custody of an officer who will conduct him to New York. His privilege of staying, or returning to his home in Illinois, or of going elsewhere, is brought to an end. It is difficult to imagine a harsher infringement of the right a citizen has to go from place to place which is a privilege, according to the expressions of the Supreme Court of the United States, secured to him under the Fourteenth Amendment.
O'Neill is entitled under Sec. 2 of Art. IV, supra, to all the privileges and immunities of all the citizens of all the other states so long as he has not committed crime for which he could be extradited. The power to remove him in this isolated situation is found in that section. The courts have held that this kind of extradition depends on the Constitution of the United States, People ex rel. Corkran v. Hyatt, 172 N.Y. 176, 64 N.E. 825, 60 L.R.A. 774, and not on comity, courtesy or contract. Ex parte Thompson, 85 N.J. Eq. 221, 96 A. 102.
We think the matter is purely one of conflict with the Federal Constitution; that the act violates the constitution, and consequently cannot be upheld.
Inasmuch as the circuit judge apparently could have put the witness under subpoena if he concluded against the "desirability" of placing him in custody and could have bound the witness to appear, or be held in contempt, and since the judge held the whole act unconstitutional and discharged O'Neill, we decide, too, the question of the validity of the law as it would be applied in the other instance.
It was the view of the circuit judge that the courts of this state were without power to issue process effective beyond the borders of the state. This general rule we understand is true. Passett v. Chase, 91 Fla. 522, 107 So. 689. Nor can civil process operate beyond the limits of the state so as to form a basis for a money judgment against one residing without although he has been made a party to the litigation by constructive service. Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565.
Because we believe, after careful study, that this feature of the law is unconstitutional, for the reasons we have given, we find no occasion to discuss the question whether or not it violates Secs. 9 and 12 of the Declaration of Rights of the Constitution of Florida, F.S.A. and the Eighth and Fourteenth Amendments of the Constitution of the United States because no bail is provided for persons attached and delivered into custody of an officer of another state.
We ask the rhetorical question: How, then can a Florida court enforce an order to appear before a court of another state when the operation of the order clearly extends beyond state limits? While any person is within the boundaries of this state he is subject to orders entered against him by courts properly exercising their jurisdiction, *156 but it would be inconsistent with the decisions cited to hold that such a court could command a witness to appear in New York, send him on his way, then, if the witness did not appear in New York, punish him here for his failure there "in the manner provided for the punishment of any witness who disobeys a summons issued from a court of record in this state." It is not clear just what court would administer the punishment in the event of default because that part of the act provides that "he shall be punished" in the manner described. Conceivably his failure would be contemptuous of both courts. If the Florida court attempted to inflict punishment, it would be for failure to comply in New York; if the New York court undertook to inflict punishment, it would be for failure to obey a summons set in motion in Florida. Either way the Florida process would be operating extra-territorially.
The Attorney General concedes in his brief that the Supreme Court of the United States has held that among the privileges of American citizenship guaranteed by the Fourteenth Amendment is the right to pass freely from state to state, citing Twining v. New Jersey, supra. He takes the position that Sec. 2 of Art. IV has no application to the facts of this case because, as we understand it, the statute, Sec. 942.02, does not discriminate between the citizens of Florida and the citizens of any other state. This would mean that O'Neill, a sojourner from Illinois, could be summarily put in custody or placed under subpoena, because any citizen of Florida could be treated the same way. To extend this argument the law would be valid because in those states that have adopted it any person could be placed in custody or put under subpoena, to coerce his appearance as a witness in any other state that had adopted the law.
This might be an answer to a charge of discrimination but it does not follow that if a law is invalid for some reason it should nevertheless be held good because, bad as it is, it affects all persons the same.
As we interpret the Fourteenth Amendment, the citizens of Florida and New York which have adopted the uniform law, may, as citizens of the United States, go where they please, and so may the citizens of Illinois and other states that have not enacted it. If, aside from the question now of discrimination, a citizen of a state having no such law, Illinois, travels to a state having it, Florida, and there is made subject to the law because another state, New York, thinks his presence there is `desirable', it cannot be true that the right of all the citizens of all the states to move among them has not been impaired.
The Attorney General quotes liberally from the opinion in Commonwealth of Massachusetts v. Klaus, 145 App.Div. 798, 130 N.Y.S. 713, 717, decided by the Appellate Division of the Supreme Court of New York, and italicizes a' statement in the opinion of that court that it was conceded in the brief "that the right of free ingress and egress was never intended to enable a citizen of the United States to interfere with the orderly administration of justice within the territorial boundaries of the state" and that a citizen when "within the boundaries of a state" is amenable to the constitution and laws of that state and that the privileges and immunities clause affords him only protection against unjust discrimination. This concession, said the court, was a complete answer to the charge that a law, similar to the one before us, was unconstitutional. So this decision helps us little.
We are not able so easily to decide the matter before us for we do not think that Sec. 2 of Art. IV read with the pertinent part of the Fourteenth Amendment justifies the view that no rights are abridged if no discrimination is practiced.
The Attorney General argues that "[n]o power was delegated * * * to the United States to require free ingress and egress when to do so would defeat one of the primary purposes for which the state governments were instituted, viz., the protection of the people from criminals." (Italics *157 ours.) Nor does the Constitution prohibit the states from impairing the right of free ingress and egress to the extent required to protect themselves against criminals.
We do not find in the provisions of the law a basis for the position. The act refers to prosecutions and grand jury investigations but we have ascertained nothing in it with reference to restricting such testimony to use by the state in either. The procedure is inaugurated by a certificate of a judge of record of the requesting state that the person sought to be extradited "is a material witness in such prosecution, or * * * investigation." We have supplied the italics. Furthermore, the preceding section, Sec. 942.01, Florida Statutes 1955, F.S.A., titled "Definitions" contains the following: "`Witness'  as used in this chapter [942], shall include a person whose testimony is desired in any proceeding or investigation by a grand jury or in a criminal action, prosecution or proceeding held by the prosecution or the defense." (Italics ours.) So, evidently the procedure would be available to a defendant as well as the prosecution.
We realize that the right of ingress and egress is not absolute, for instance, the Fourteenth Amendment does not limit exercise by the state of the police power to protect the health, morals and general welfare of the people. Butchers' Union S.H. and L.S.L. Co. v. Crescent City L.S.L. and S.H. Co., 111 U.S. 746, 4 S.Ct. 652, 28 L.Ed. 585. But we do not discern in the present state of facts any of the elements of an exception.
The Attorney General concedes that circumstances might exist under which bodily delivery of a witness would be unreasonable and that "it was never intended to authorize the delivery of a witness * * * where the circumstances are such that it would be unreasonable to do so * *." This statement is followed by the remark: "when the statute is thusly construed there is nothing unreasonable about it." In this connection we refer, again, to the procedure. If the judge of the demanding state certifies the `desirability' of bodily delivery, it shall be prima facie evidence of the `desirability' and the judge here may, if satisfied with the `desirability', have the witness taken into custody. We cannot decide the constitutionality or unconstitutionality of the act under attack by simply saying that if the circumstances are reasonable there is nothing unreasonable about the act.
After a careful study of both features of the law, we are convinced that it is unconstitutional and that the circuit judge ruled correctly when he held it so.
Affirmed.
TERRELL, C.J., and HOBSON, THORNAL and O'CONNELL, JJ., concur.